STATE, Plaintiff, vs. BOLISKI, Defendant.

*January 17—February 3, 1914.*

*Criminal law: Possession of burglarious "machine, tool or implement:" Nitroglycerine: Construction of statutes.*

1. A bottle of nitroglycerine and a fuse and detonating cap, though not actually in combination when found in the possession of a person, constituted a "machine, tool or implement designed and adapted for . . . forcing or breaking open any building, room, vault, safe or other depository," within the meaning of sec. 4411a, Stats. 1898. The contrary is not shown by the mere fact that said section was afterwards amended (ch. 88, Laws of 1911) so as to expressly include "nitroglycerine or other explosive."

2. Like all other rules of construction, the rule that laws of a penal character are to be strictly construed is not to be applied unless obscurity of meaning in a statute calls for construction.

3. The dominating purpose of all construction being to arrive at the legislative intent, words should be read sensibly, and sometimes a liberal construction is required even in respect to a penal statute.

4. If the legislative purpose in a penal statute is uncertain and the words used may mean one thing or another according to the intent with which they were used, they should be read, ordinarily, so as to minimize rather than extend their penal character.

REPORTED under sec. 4721, Stats., from the circuit court
for Waupaca county: BYRON B. PARK, Circuit Judge. *Question answered in the affirmative.*

Prosecution under sec. 4411a, Stats. 1898, for being possessed of a "machine, tool or implement designed and adapted
for cutting through, forcing or breaking open any building,
room, vault, safe or other depository, knowing the same to be
designed and adapted for such purpose, with intent to use or
employ the same therefor in order to steal from any building,
room, vault, safe or other depository any money or other
property. . . ."

The accused having been duly informed against under such
section entered a plea of not guilty and was tried on the issue
thus formed.

The evidence on the trial was to this effect: The accused
was arrested in a saloon while offering playing cards for
sale. These articles were found in his possession: A bottle,
about two thirds full of nitroglycerine, a tin box, containing
three pieces of fuse, each seven or eight inches long fitted
with a detonating cap, such as are used to explode dynamite
and nitroglycerine, a spring such as is ordinarily used for
confining a torpedo to a railway track, a piece of slate about
the size of a playing card, a candle about three inches long,
and a bar of soap. Between the time of the arrest and the
trial the accused escaped from jail twice. The jury rendered
a verdict of guilty.

The court duly certified here for an answer this, in effect:
Are the articles found in the possession of the accused and
described in the information such as are mentioned in sec.
4411a, so warranting the court in pronouncing judgment on
the verdict?

For the plaintiff there was a brief by the *Attorney General, Winfield W. Gilman,* assistant attorney general, and
*Llewellyn Cole,* district attorney, and the cause was argued
orally by *Mr. Gilman.* They cited, among other cases,

*Comm. v. Day,* 138 Mass. 186; *Comm. v. Johnson,* 199 Mass.
55, 85 N. E. 188; *Comm. v. Conlin,* 188 Mass. 282, 74 N. E.
351; *State v. Layton,* 191 Mo. 613, 90 S. W. 724; *State v.
Hanley,* 133 Iowa, 474, 110 N. W. 914; *Foster v. People,* 3
Hun, 6, affirmed 63 N. Y. 619; *People v. Myers,* 2 Hun, 6;
*People v. Reilly,* 49 App. Div. 218, 63 N. Y. Supp. 18, af-
firmed 164 N. Y. 600, 59 N. E. 1128; *State v. Wayne,* 62
Kan. 636, 64 Pac. 69; *People v. Sansome,* 84 Cal. 449, 24
Pac. 143; *People v. Jones,* 124 Mich. 177, 82 N. W. 806.

For the defendant the cause was submitted on the brief of
*John C. Hart.*

MARSHALL, J.   It is considered that the bottle of nitro-
glycerine with the fuse and detonating cap clearly answer to
the calls of the statute for a "tool, machine or implement,"
adapted to the particular use mentioned therein, designed to
that end, and intended to be used therefor.

The fact that the legislature by ch. 88, Laws of 1911,
changed the statute so as to expressly include "nitroglycerine
or other explosive" does not militate, necessarily, against an
explosive in connection with a fuse and detonating cap being,
in a proper sense, a machine, tool, or implement, within the
legislative meaning.   It is not infrequent that the legislature
makes a law, in reasonably plain terms, as one would com-
monly consider the language used, and, later, because of at-
tempts to attribute to the words thereof a narrow technical
meaning, minimizing or defeating the purpose, such purpose
is re-expressed with intent to render it so unmistakable as to
leave no possible room for failure to comprehend it.

Counsel for the accused indulges in the idea that the terms
in question will admit of a construction sufficiently narrow as
to exclude therefrom the articles in question, either singly or
in combination, and relies upon the rule, often referred to, and
applied in proper cases, that laws of a penal character are
to be strictly construed.   The mistake is often made of sup-

posing that to be a rule of general or universal application; but such is not the case. No rule of construction has any office to perform until obscurity of meaning is discovered. Where words, viewed in the abstract, will admit of two or more meanings, but the particular one intended by the law-making power is plain, to resort to construction for the purpose of narrowing the scope of the words, is entirely outside of the judicial field.

So construction must wait upon need for construction, and then sensible construction should be applied. That requires, when the intention of the legislature is obvious, such reading of language within the scope of its meaning as to give intended vitality to such language. Sometimes a strict and sometimes a liberal construction is required, even in respect to a penal law, because the dominating purpose of all construction is to carry out the legislative purpose.

Here it is manifest that the legislature intended to make the possession of any physical instrumentality, designed and intended to be used for the criminal purpose mentioned in the statute, an offense. So words were used to accomplish that purpose. Those words then should be read with that purpose in view. If when so read they are plain,—there is no need for construction. If then not plain, they should be read sensibly; that is, reasonably so as to accomplish the legislative purpose if a fair meaning of the words will permit of it. If the purpose is uncertain and the words to express it might mean one thing or another, according to the intent with which they were used, then they should be read, ordinarily, so as to minimize rather than extend their penal character. These principles are so well understood that they may well be stated without reference to authorities. They are basicly elementary in the law.

To repeat, the purpose here being plain, the meaning of "machine, tool or implement" is unambiguous. Tools in the broad sense include implements in general, or objects used

to perform a physical operation when plied or directed by hand and are movable, to accomplish such operation, as distinguished from a machine operated by some motive power other than that of the hand. A machine is a combination of parts by which, when motive power is supplied, it may be transmitted and, directly, or by relation to another physical instrumentality, produce some physical result. The three terms "tool, implement or machine" are comprehensive enough to include substantially all physical instrumentalities, by which, through human interference, physical results may be accomplished.

In this case they were all the parts of a powerful instrumentality, appropriate to accomplish the destruction of any ordinary hindrance to access to "any building, room, vault, safe or other depository" of property. The fact that the parts were not actually in combination when found in the possession of the accused is unimportant. If, in such a case, one has in his possession, the parts of a machine which can easily be put in connection for the production of a particular physical result, the mere fact that, for convenience, or personal safety, or otherwise, they are kept out of connection, waiting upon an occasion for combining them, would not take from their character as a "tool, implement or machine," and so render the person immune from the consequences of violating the statute.

It follows from the foregoing that the question submitted must be answered in the affirmative and the cause be remanded for further proceedings according to law.

*By the Court.*—So ordered.