BENNETT, Plaintiff in error, v. STATE, Defendant in error.

*No. State 57. Argued March 30, 1972.—Decided May 2, 1972.*
(Also reported in 196 N. W. 2d 704.)

728

For the plaintiff in error there was a brief and oral argument by *Anthony K. Karpowitz,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J.   The main thrust of the defendant's argument is that the evidence is not sufficient to sustain the finding of guilty. This contention is based, in part, upon claimed errors in the admission of evidence of speed, intoxication, and admission of volunteered opinion testimony as to intoxication by a police officer.

Sec. 940.09, Stats., provides in part:

**"Homicide by intoxicated user of vehicle or firearm.** Whoever by the negligent operation . . . of a vehicle, . . . and while under the influence of an intoxicant causes the death of another may be fined not more than $2,500 or imprisoned not more than 5 years or both. No person shall be convicted under this section except upon

proof of causal negligence in addition to such operation or handling while under the influence of an intoxicant."

To warrant a conviction under this section the evidence must be established by the requisite degree of proof: (1) That the defendant was the operator of a vehicle involved; (2) that he was negligent in such operation; (3) that he was under the influence of an intoxicant at the time of the accident; (4) that the accident caused the death of another person; and (5) that his negligence was a cause of the accident and resulting death.

While there is some disputed evidence in the record, this court, upon review of the sufficiency of the evidence, does not resolve such factual disputes. We examine the evidence to determine whether there is credible evidence in the record which, if believed by the trier of the facts, is sufficient to convince a reasonable jury or judge that the defendant is guilty of the crime charged (and all its essential elements) beyond a reasonable doubt. We believe this record contains the quantity and quality of evidence necessary to sustain the conviction.

The record reveals the following facts in support of the jury finding of guilty:

At approximately 7 p. m., on May 17, 1970, Frank Corrao, his wife Margaret, and their four-year-old daughter Kelly, were driving north on Highway 145 near Good Hope Road in the city and county of Milwaukee. Corrao was driving a green Buick at about 55 to 60 miles per hour.

Highway 145 was a divided highway with three lanes going north and three lanes going south. Corrao testified that he was driving north in the center lane without deviation from that lane.

When his car reached the intersection of Good Hope Road and Highway 145, Corrao felt a thud in the rear end of the car and then saw the "abutments coming flying" at him. Corrao did not actually see the defendant's car strike his.

Salvatore Balistreri testified that he was on an adjacent service road and in the process of entering Highway 145 when he saw a green Buick driving north on Highway 145 pass him, going about 55 to 60 miles per hour. After Balistreri entered Highway 145, a Dodge, driven by defendant Bennett, passed him at a high rate of speed. The Dodge cut in front of him into the right lane and then, as the road turned to the right, it started to cut back into the center lane. Balistreri estimated that the Dodge was going over 100 miles per hour when it passed him. He also testified that the Dodge started to slow down after it passed him.

A few moments after the Dodge passed him Balistreri saw a cloud of dust go up over the Good Hope bridge. At this time Balistreri was going up the slope of a rise and did not see the collision between the Corrao and Bennett vehicles.

As Balistreri drove over the rise he observed the Dodge still moving north on the highway but it had turned around and was going backwards. Balistreri then drove up parallel with the Dodge, which had stopped, and he started to go to the car. He observed three people in the front seat who were fighting. One of the persons was the defendant David Leonard Bennett, who was in the driver's seat. Balistreri also observed several beer cans in the Dodge.

Because no one appeared injured in the Dodge, Balistreri then proceeded to the Buick. He opened the car door and Corrao fell out. Balistreri then noticed Margaret Corrao lying between the front seats of the Buick. She appeared to him to be decapitated. She died four days later from a skull fracture sustained in the accident. Balistreri took the little girl out of the car, walked with her until he came parallel with the Dodge and faced south so that she would not be able to see her car. Balistreri testified that:

". . . [defendant] came up to me and started yelling, the little girl was screaming, he had to talk loud, that 'That son-of-a-bitch wasn't going fast enough.' That kind of caught me by surprise, and I said, 'You passed me like a maniac.' And then he . . . threatened me that if I were to tell this to the police department when they would arrive."

Balistreri further testified that the defendant approached him twice more, uttering obscenities and vulgarities and threatening him if he told the police. Balistreri also smelled beer on defendant's breath.

Douglas Rindt was then called as a witness by the state. He testified that about 7 p. m., on May 17, 1970, he was traveling south on Highway 145 when he saw a cloud of dust in the northbound lane. He saw Corrao's car come to a rest against the guardrail on the side of the road. He also saw the defendant's car spinning around, stopping in the center lane. The defendant's car door opened and several beer cans were thrown out of the car into the ditch. Rindt stopped his car, got out and ran to Corrao's car. As he approached he saw Corrao lying on the ground. The defendant approached Corrao and began questioning Corrao, asking him why he was going so slow and other questions of the same nature.

The state then called Thomas Elbert as a witness. He described the defendant's speech as "very slow and slurred."

Henry R. Sapinski is a deputy sheriff of the county of Milwaukee and is also a certified breathalyzer operator for the state of Wisconsin. Sapinski testified that after the defendant had been taken to the sheriff's department in the safety building, he administered a breathalyzer test to the defendant. The result of the test was that defendant's blood contained .17 percent alcohol by weight.

John Kubiak, deputy sheriff for the county of Milwaukee, was then called as a witness. Shortly after the accident he spoke to the defendant. He testified that in his

opinion the defendant was intoxicated at the time of the accident. The defendant's speech was slurred, incoherent and very slow. Kubiak further testified:

"At the scene of the accident, I first—when I first approached him, I asked him if he was the driver of the Dodge, and he told me that he was. I observed him staggering and I smelled a strong odor of beer on his breath, his eyes were rather glassy, his speech was slurred."

In response to a question as to whether he had looked into the defendant's car, Kubiak replied:

"I observed beer cans on the rear seat, the rear floor. There were beer cans on the front seat and the front floor area. There were one or two beer cans on the pavement directly next to the car. This is the Dodge, Mr. Bennett's car. And I observed a beer can that was open and spilling onto the floor between the front seat and the driver's door, on his side.

Kubiak also stated that the defendant had told him that he felt that Corrao's car was not going fast enough to be on the freeway.

The defendant was called as a witness on his own behalf. He testified that he was traveling at about 70 to 75 miles per hour (the legal maximum was 60 miles per hour) when he arrived at the rise before the Good Hope turnoff. He stated that he noticed the Corrao car and slowed to approximately 60 to 65 miles per hour. The car in front of him, which had been in the center lane, then turned into the right lane in which the defendant was traveling. The defendant looked back to see if he could swerve into the center lane, looked ahead, saw the Corrao car directly in front, slammed on his brakes and hit him.

The defendant also testified that he had been drinking shortly before the accident. He had at least three cans of beer at the home of a friend, and three or four 12-ounce

bottles of beer at another residence. Two of his passengers testified and in general corroborated his testimony.

We believe the credible evidence offered by the state (the breathalyzer test results and the corroboration of intoxication by other evidence) is sufficient to prove intoxication at the time in question.[1]

As is apparent from the statute, the state must prove causal negligence in addition to intoxication.

The defendant contends there is no evidence in the record as to the defendant's negligence other than speed, and that the evidence of speed is not of sufficient probative value to form a basis of a finding of causal negligence. On this point he argues, in effect, that evidence given by the witness Balistreri is without probative value. We disagree.

The maximum speed limit at the time and place was 60 miles per hour. Balistreri had been employed as a truck driver for ten years and drove trucks about 60,000 to 70,000 miles per year, and that in addition thereto he drove his private vehicle 25,000 miles per year.

Just prior to the accident he was driving on the adjacent service road at a speed of 25 to 30 miles per hour, intending to turn onto Highway 145. He was parallel to Corrao and testified that Corrao's speed was 55 to 60 miles per hour. After Balistreri turned onto Highway 145 his speed increased to about 55 to 60 miles per hour. He was in the right line of the three north lanes. While in this position and speed the defendant passed him at a speed which he estimated to be "over a hundred miles an hour." After the defendant passed Balistreri the defendant slowed down somewhat but his speed was still at such a high rate he went over the crest of a hill and out of sight and was involved in the accident. If Balistreri was going 50 to 60 miles per hour it is a verity that

[1] Sec. 885.235 (1) (c), Stats.

the defendant was exceeding 60 miles per hour. Balistreri stated he was able to observe the defendant's vehicle for five or six seconds. Because of Balistreri's experience as a driver, his position on the highway to observe both Corrao's and the defendant's vehicles just moments before the collision in close proximity to the place of the accident, we believe Balistreri was qualified to give his opinion as to speed and that his opinion had probative value. The weight of his testimony was of course for the jury.

There was additional evidence as to speed. Corrao testified his speed was 55 to 60 miles per hour and that he did not deviate from the center lane. The jury was entitled to believe this testimony. The defendant's speed was such that his momentum carried in the direction he had been going in a backwards position for almost 100 feet. From this evidence the jury could conclude that the defendant was causally negligent as to speed.[2]

The defendant contends that ". . . since there is no testimony concerning the procedure used by the operator for the test performed and, there was no evidence of the reliability and accuracy of the particular machine, the testimony of the breath test lacked the competency and foundation for the use of the statutory reference of sec. 885.235, Stats. The court erred in allowing in that testimony in the absence of a proper foundation."

Competent trial counsel did not object to the admission of the test results and, indeed, examined Deputy Sapinski on the test's results in cross-examination.

An objection must be made to the introduction of evidence as soon as the adversary party is aware of the objectionable nature of the testimony. Failure to object results in a waiver of any contest to that evidence. *Nadolinski v. State* (1970), 46 Wis. 2d 259, 174 N. W. 2d 483; *State v. Torpy* (1971), 52 Wis. 2d 101, 109, 110, 187

---

[2] *Milwaukee v. Berry* (1969), 44 Wis. 2d 321, 171 N. W. 2d 305.

N. W. 2d 858. Therefore, in the instant case the defendant waived any contest to the admission of the breathalyzer test due to his failure to object at the trial court level.

The defendant also argues that the trial court improperly admitted into evidence Deputy Sapinski's testimony that the defendant was intoxicated. One exchange that defendant objected to is as follows:

"*Q.* Would it be fair to state that at that time at the date May 17, 1970, at the time that you took the test, that Mr. Bennett's balance was fair?
"*A.* I would say that the man was intoxicated.
"*Q.* That's not the question, sir.
"*Mr. Schalow:* I move that be stricken and the witness be admonished—
"*The Court:* It may be stricken."

It is obvious that the first statement of Sapinski was struck from the record. The court also instructed the jury to disregard the testimony that had been struck. Such an instruction is presumed to efface any possible prejudice to the defendant. *Woodhull v. State* (1969), 43 Wis. 2d 202, 168 N. W. 2d 281.

There is one other exchange to which the defendant objected:

"*Q.* Now, you say you remember this defendant real well. Why do you remember him real well?
"*Mr. Schalow:* Objection.
"*The Court:* Overruled.
"*Mr. Podell:*
"*Q.* You may answer.
"*A.* On the way to the safety building in the conveyance this man was very belligerent and hostile and was using high profanity, such as '. . .[3] I will get you.' And

---

[3] The testimony omitted is grossly obscene and vulgar. To reprint it will serve no useful purpose.

he didn't say it once. He said it a dozen times. Of course, I ignored the fact that the man was intoxicated.

"*Mr. Schalow:* I would object to him—now, I am going to—I would like to be heard.

"*The Court:* Objection is overruled. This is an observation which the officer testified to."

There can be no doubt but that Deputy Sapinski's testimony as to the defendant's intoxicated state would have been properly admitted if his testimony had been elicited as an opinion with an adequate foundation. *Milwaukee v. Kelly* (1968), 40 Wis. 2d 136, 161 N. W. 2d 271; *Milwaukee v. Thompson* (1964), 24 Wis. 2d 621, 130 N. W. 2d 241; *Milwaukee v. Johnston* (1963), 21 Wis. 2d 411, 124 N. W. 2d 690.

In the instant case no proper foundation was laid nor was the testimony of Sapinski anything other than a volunteered statement which was not responsive to the question posed to him.

Counsel for defendant in this matter states that the objection to the testimony was based upon the fact that Sapinski's manner and attitude were so biased against the defendant that he could not receive a fair trial. However, an examination of the record reveals that trial counsel objected to the statement on the ground that a proper foundation had not been laid.

It appears that Sapinski's testimony was improperly admitted because it lacked an adequate foundation and that it was properly objected to by defense counsel.

The question then arises—does the admission of the statement constitute reversible error? We conclude that it does not.

The record reveals that Deputy Kubiak testified that in his opinion the defendant was intoxicated. He observed the defendant staggering, and smelled beer on his breath. The defendant's eyes were glassy and his speech slurred. Thomas Elbert testified that the de-

fendant's speech was slow and slurred. Finally, the breathalyzer result showed that defendant had .17 per cent alcohol by weight in his blood.

Sec. 885.235 (1) (c), Stats., provides:

**"Chemical tests for intoxication. (1)** . . .
"(c) The fact that the analysis shows that there was fifteen-hundredths of one per cent or more by weight of alcohol in the person's blood is prima facie evidence that he was under the influence of an intoxicant, but shall not, without corroborating physical evidence thereof, be sufficient upon which to find the person guilty of being under the influence of intoxicants."

There is ample credible evidence to corroborate the prima facie evidence of intoxication as revealed by the breathalyzer without Sapinski's volunteered statement. On the basis of this other evidence the admission of Sapinski's statement was, at most, harmless error. *Claybrooks v. State* (1971), 50 Wis. 2d 79, 86, 183 N. W. 2d 139; *Woodhull v. State, supra.*

*By the Court.*—Order affirmed.