PERKINS, Plaintiff in error, v. STATE, Defendant in error.

*No. State 35. Argued October 31, 1973.—Decided November 27, 1973.*
(Also reported in 212 N. W. 2d 141.)

---

For the plaintiff in error there were briefs by *Howard B. Eisenberg,* state public defender, and *Ronald L. Brandt,* assistant state public defender, and oral argument by *Mr. Brandt.*

For the defendant in error the cause was argued by *Christine M. Wiseman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. On this appeal the defendant has posed three issues: Whether the homemade key allegedly used by the defendant constitutes a burglarious tool as defined by sec. 943.12, Stats.; [1] whether the district at-

---

[1] "943.12 **Possession of burglarious tools.** Whoever has in his possession any device or instrumentality designed and adapted for use in breaking into any depository designed for the safekeeping of any valuables or into any building or room, with intent to use such device or instrumentality to break into a depository, building or room, and to steal therefrom, may be fined not more than $1,000 or imprisoned not more than 10 years or both."

torney abused his discretion by charging defendant with possession of a burglarious tool; and whether the defendant was twice put in jeopardy for the same offense when he was charged with possession of a burglarious tool.

Only the first issue, whether the key was a burglarious tool as defined by the statute, can be raised in this court and disposed of by a decision in this case. The other two issues arise out of contentions appearing in the defendant's appeal brief but which are not based upon facts in the record.

To put the argument of the defendant on appeal in perspective, we state in summary form those contentions.

The defendant contends that, on the basis of the episode which occurred on the night of July 14, 1971, the defendant was tried and, on October 28, 1971, found guilty of theft from the parking meter. The record shows that the defendant was subsequently, on July 21, 1972, convicted of the possession of the burglarious tool, *i.e.,* possession of the homemade key that was used to open the parking meter on the evening of July 14, 1971. Both charges, defendant contends, related to the same criminal act, the alleged taking of money from a parking meter with the use of a key-like device.

From this predicate of facts, the defendant alleges that the prosecutor abused his discretion by bringing charges for the possession of the burglarious tool when there had been a previous conviction for the major crime, the theft that arose out of the same incident. It is also urged that the trial court committed constitutional error in the nature of double jeopardy in permitting a second trial on facts arising from an incident that had been before a court on a criminal charge before.

These are significant issues. However, the problem with their consideration is that they depend on facts that the defendant did not place in the record. Nothing of record shows that the district attorney charged the

defendant with the possession of a burglarious tool at a time subsequent to charging him with a theft that arose out of the same incident. Nor is there anything of record to show that the defendant was tried on a charge that arose out of a criminal episode when one charge arising out of the same incident had resulted in a conviction.

These two contentions could be disposed of in this court only if we were able to take judicial notice of the proceedings in a court other than that from which the instant appeal has been taken. While a court can take judicial notice of many facts that are matters of indisputable common knowledge, it cannot take judicial notice of records that are not immediately accessible to it or are not under its immediate control. An appellate court's power to judicially notice facts that do not appear in the record has been definitively explored in an article by former Mr. Chief Justice GEORGE R. CURRIE which appeared in 1960 Wisconsin Law Review, *Appellate Courts Use of Facts Outside of the Record by Resort to Judicial Notice and Independent Investigation,* 39, 40:

". . . the tendency is to extend judicial notice beyond the field of facts of common knowledge to the sphere of those facts 'capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy.'"

Applying that test, we have refused to take judicial notice of the width of a street in Kenosha county, even though that measurement was recorded in the office of the register of deeds in Kenosha county. *Robison v. Borkenhagen* (1964), 25 Wis. 2d 408, 410, 130 N. W. 2d 770. On the other hand, this court has taken judicial notice of state records that are available at the seat of government in Madison that are easily accessible. We have held that a circuit court cannot take judicial notice of its own records in another case. *State v. La Pean*

(1945), 247 Wis. 302, 307, 19 N. W. 2d 289; *State ex rel. Mengel v. Steber* (1914), 158 Wis. 309, 311, 149 N. W. 32.

On the basis of these precedents, we conclude that we cannot take judicial notice of an alleged conviction, when that conviction has not been made a part of the record before us. Under this state of the record, this court cannot consider whether the prosecutor abused his discretion or the court committed constitutional error in the nature of double jeopardy when the crime of possessing a burglarious tool was charged and a trial and conviction ensued. We do not decide herein whether, had the record shown the crime of theft, there would be merit in the defendant's contention. Although this court cannot resolve these questions in this case, the defendant is not precluded from further proceedings in the trial court by means of a postconviction motion, which would permit the introduction of testimony, to show the charging and conviction of the allegedly related crime.

We point out, however, that, under the traditional test of double jeopardy which has heretofore been followed by this court, it does not appear that the second conviction, that of possession of the burglarious tool, placed the defendant in jeopardy again for the same offense. The defendant correctly points out that in this court the double jeopardy provision of the United States Constitution has not been held applicable even where two or more criminal charges arose out of the same episode, if each charge arising out of that episode required the proof of different facts. *State v. Elbaum* (1972), 54 Wis. 2d 213, 194 N. W. 2d 660. Proof of the crime of possessing a burglarious tool required facts that were entirely different than the facts required to show the theft. Hence, as we have interpreted the constitution, there was not a second trial for the same offense.

We recognize, however, that in recent years there have been serious inroads upon the strict concept of

double jeopardy as heretofore interpreted by our court. The most persuasive of the decisions espousing a new concept of double jeopardy is *Commonwealth v. Campana* (1973), 452 Pa. 233, 304 Atl. 2d 432. That case held that the constitutional provisions against double jeopardy require a prosecutor to bring in a single proceeding all known charges against the defendant arising from a single criminal episode. Applying that rule, the Pennsylvania court reversed the judgments of conviction which followed a second prosecution arising out of the same criminal episode, even though the proof of the second crime required facts other than those required for the first conviction.

This court has, however, stated that, as a matter of public policy, charges growing out of the same incident should be tried together. *State v. Elbaum* (1972), 54 Wis. 2d 213, 220, 194 N. W. 2d 660. We have held that the violation of that admonition does not result in double jeopardy. We therefore decline to reach the question posed, not because it is of insignificant proportions, but because the situation hypothesized by the defendant on this appeal is not substantiated by the record before us.

The only question, then, that is posed by the record is whether, under the statute, the trial court properly found that the homemade key was a burglarious tool. We are satisfied that it was.

The case of *State v. Boliski* (1914), 156 Wis. 78, 145 N. W. 368, raised the question of whether a bottle of nitroglycerine with attached fuse and detonating cap was a tool or implement designed for breaking into various types of containers or other depositories. The court concluded that the bottle of nitroglycerine was an outlawed type of tool. The court concluded that, while criminal statutes are to be strictly construed, that is a rule of construction only, and the construction of a statute only becomes relevant when the meaning of the statute is obscured. It stated:

"Sometimes a strict and sometimes a liberal construction is required, even in respect to a penal law, because the dominating purpose of all construction is to carry out the legislative purpose.

"Here it is manifest that the legislature intended to make the possession of any physical instrumentality, designed and intended to be used for the criminal purpose mentioned in the statute, an offense." *Boliski*, page 81.

The statute with which we deal, sec. 943.12, Stats., is a product of the criminal law revision effective in 1955. It is the successor to sec. 343.131, which particularized the types of tools, devices, implements, and the circumstances which were intended to be covered. The purpose and philosophy of the criminal code revision is set forth at length in an article by William A. Platz, one of the architects of the 1955 code, in the 1956 Wisconsin Law Review, page 350. Platz, on page 353, points out that the most important objective of the code was simplification of language. He wrote:

"Statutes defining crimes have in the past tended to become so complicated and ungrammatical as to be nearly unintelligible. . . ." (P. 353)

"Such legislation may be due to a feeling that great precision is required by the due process clause and the rule of strict construction. The code, for the most part, rejects the notion that every circumstance subject to criminal penalty must be designated with particularity in the statute and proceeds on the principle that conduct may be prohibited in general language without violating the requirement of certainty." (Pp. 354, 355)

Criminal conduct in the 1955 revision is codified in terms of broad coverage according to the societal interest to be protected. For example, the general crime of theft, as set forth in the 1955 code, was in substitution of a multitude of statutes which defined theft separately according to the nature of the thing taken. It is apparent that the underlying objective of language simplification

and the codification of criminal conduct in accordance with the societal interest protected guided the legislature's definition and generalized prohibition against the possession of burglarious tools. The legislative language of sec. 943.12, Stats., refers to "any device or instrumentality." These are precatory words indicative of the legislature's intent to limit the meaning of "device or instrumentality" only by the language which sets forth the societal interest involved, "designed and adapted for use in breaking into."

Webster's, *Third New International Dictionary* (unabridged, 1965), confirms the legislative meaning which is apparent from the face of the statute. "Instrumentality" is defined as "something by which an end is achieved: means." A "device" is defined as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." A "key" is defined as "an instrument usu. of metal so designed that it may be inserted in a lock in order to operate the bolt or catch."

Under a predecessor statute to sec. 943.12, Stats., this court held that the possession by a defendant of three skeleton keys, together with other implements, was probative of the defendant's possession of what were in effect "burglarious tools." *Scott v. State* (1895), 91 Wis. 552, 65 N. W. 61.

The homemade key found in possession of the defendant was a "device or instrumentality designed and adapted for use in breaking into any depository designed for the safekeeping." The parking meter which was designed for keeping intact parking fees was a depository. Webster's, *Third New International Dictionary* defines "depository" as "a place where something is deposited or stored (as for safekeeping or convenience)."

The clear legislative intent was to make criminal the possession of any device designed for the criminal purpose

of an illegal entry when that possession was coupled with the intent to use a device for the prohibited purpose. Under the plain meaning of the statute, the homemade key was a device or instrumentality possessed with the intention to break into a depository, the parking meter.

*By the Court.*—Judgment affirmed.