STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Oliver Robert TOLIVER, Defendant-Appellant.

Supreme Court

*No. 80–727–CR. Argued October 7, 1981.—*
*Decided November 3, 1981.*

(Also reported in 311 N.W.2d 591.)

For the petitioner the cause was argued by *Pamela Mcgee-Heilprin*, assistant attorney general, with whom

on the brief was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Donald T. Lang,* assistant state public defender.

BEILFUSS, C. J.   This is a review of an unpublished decision of the court of appeals. The defendant, Oliver Robert Toliver, was convicted of two felonies—burglary and endangering safety by conduct regardless of life as a party to the crime—after a jury trial in the Circuit Court for Milwaukee County, FREDERICK P. KESSLER, Judge.

In the court of appeals the defendant raised five issues. The court of appeals reversed both convictions. The burglary count was reversed because the trial court failed to give a requested jury instruction on intoxication. This issue is not before us. The court of appeals also reversed the conviction of endangering safety regardless of life upon the ground that the evidence was insufficient to support the verdict. This is the only issue now here for consideration.

The pertinent facts as they appear in the record are as follows:

Two Milwaukee police officers, Harry Gorecki and Wayne Malinski, testified that on May 14, 1979, at approximately 4:15 a.m., they observed a Cadillac automobile coming out of an alley with its headlights out. The officers saw two black men seated in the front seat and what appeared to be a pile of tires in the back seat. A tire store is located on the block where the car was noticed. The store abuts the alley from which the car entered the street.

The officers pursued the car approximately two car lengths behind, using their flashing red lights and siren. While attempting to flee, the car initially made a right

turn, drove up over the curb, then back down the curb and onto the road. After further pursuit the vehicle appeared to be out of control, went up a curb and sidewalk, and came to a stop near some bushes and trees in a vacant lot.

The officers thought the car was stalled so they stopped their squad car and approached on foot. As they came towards the Cadillac, it started up and headed out of the lot in an easterly direction with its headlights off. The car made a sudden left turn and drove directly at Officer Malinski. He leaped out of the path of the car and testified that it missed him by approximately four feet. He stated that, while the car was coming towards him, he could make out two black males in the front seat.

Both officers fired at the fleeing vehicle and pursued it. The flashing red lights and siren of the police car were still activated. The vehicle was stopped by another officer approximately one and a half blocks down the street. Both of the occupants of the car went out of the driver's side and attempted to run away. The defendant was apprehended by other police officers on the scene, but his companion was not caught. Although defendant owned the car, no one could identify him as the driver. His testimony was that he was drunk and passed out in the front seat, while his companion drove the car.

The defendant was charged with being a party to the crime of endangering the safety of Officer Malinski and with being a party to the burglary of the tire store. It was determined that the tires in the back of defendant's car were stolen from the tire store. Defendant was convicted on both charges after a jury trial. The court of appeals reversed on the endangering safety charge, finding that the evidence was insufficient to support a conviction.

Sec. 941.30, Stats. 1979, provides as follows: "Whoever endangers another's safety by conduct imminently

dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony." The court of appeals held that defendant's conduct was not imminently dangerous and did not evince a depraved mind regardless of life.

The court of appeals stated that:

"During the chase, Toliver's vehicle went out of control, over a curb and into a bushy area on a vacant lot. The vehicle appeared to have become stuck or stalled near the bushes. As the officers exited their squad car and proceeded toward Toliver's vehicle, it started up again and turned in the direction of one of the officers, who jumped out of its path and escaped being hit by about four feet. This incident occurred at 4:15 on a Monday morning—a time of negligible vehicular traffic. Further, as in *Wagner,* the presence of the person endangered by Toliver's vehicle was not readily apparent. At 4:15 a.m. it is dark outside. The lights on Toliver's vehicle were not on and officer Malinski was not carrying a flashlight. There is no indication in the record that the vacant lot was lit in any way. It is entirely possible that Toliver or his companion could not have seen the officers."

The test for reviewing the sufficiency of the evidence has been stated as follows:

"The question to be decided then is whether the state has met its burden in proving these elements. In making this determination, we do not sit as a judge or jury making findings of fact. Such findings have already been made, in this case by a jury, and our function in reviewing those findings is simply to decide 'whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt.' *Lock v. State,* 31 Wis. 2d 110, 114, 142 N.W.2d 183 (1966). As we have frequently observed, ' ". . . The test is not whether this court is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude the trier of facts could, acting reasonably, be convinced to the re-

quired degree of certitude by the evidence which it had a right to believe and accept as true." ' Id. at 114–115; *Krueger v. State,* 84 Wis. 2d 272, 282–83, 267 N.W.2d 602 (1978)." *State v. Ehlenfeldt,* 94 Wis. 2d 347, 360, 288 N.W.2d 786 (1980).

This rule is consistent with the recent decision announced by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979), wherein the court held:

"After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS,* 385 U.S., at 282 (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana,* 406 U.S., at 362. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."

If this standard of review is applied in this case, the jury verdict must be upheld. There was sufficient evidence and reasonable inferences which could be drawn therefrom to justify a rational jury in finding defendant

guilty beyond a reasonable doubt on all the elements of this crime.

In order to support a conviction, the defendant's conduct must be proven beyond a reasonable doubt to have been imminently dangerous, to another, to have evinced a depraved mind regardless of life, and to have actually endangered another. There is no question that the officer's life was actually endangered; the controversy here centers on the first two elements. Several past cases define what is meant by "imminently dangerous" and "depraved mind."

In *Balistreri v. State,* 83 Wis. 2d 440, 455, 265 N.W.2d 290 (1978), we defined imminently dangerous conduct:

> "Imminently dangerous conduct is dangerous in and of itself. It must have been conduct inherently, apparently, and consciously dangerous to life and not such as might casually produce death by misadventure. *Turner v. State, supra* at 11–13; *State v. Olson, supra* at 592; *Seidler v. State, supra* at 462; *see also,* Wis J I—*Criminal,* 1345. The conduct as well as the instrumentality used must have the potentiality of causing death, though death may not be intended. *State v. Dolan, supra* at 72."

The court of appeals analogized the facts of this case to *Wagner v. State,* 76 Wis. 2d 30, 250 N.W.2d 331 (1977). In *Wagner,* the defendant was drag racing on the main street of Marshfield, Wisconsin at 11:00 on a Friday night when his car struck and killed a pedestrian. Although this was certainly dangerous conduct, this court held that it was not "imminently dangerous" because the street was deserted and defendant was not aware that any pedestrians were likely to be on the street. However the present case differs from *Wagner* because there was evidence from which the jury could reasonably infer that defendant knew of the approaching officer's presence. The officers were chasing the defendant's car, using

their lights and siren. It was certainly a reasonable assumption that the officers would be approaching the car on foot after defendant's car stopped. If the defendant knew of the officer's presence, then his conduct was "inherently, apparently, and consciously dangerous to life." This would be a much different case if defendant did not know the officers were pursuing them. The squad car's flashing lights and siren were still activated. They could not reasonably assume, as the defendant in *Wagner* did, that the officers were not there.

The other element of the endangering safety charge is that defendant's conduct must evince a depraved mind regardless of human life. As stated in *Balistreri*, "[c]onduct evincing a depraved mind must do more than create a situation of unreasonable risk of harm or death; it must be devoid of regard for the life of another." *Balistreri v. State, supra,* 83 Wis. 2d at 457–58. The defendant in *Balistreri* led the police on a high speed chase through downtown Milwaukee at rush hour. He ran several red lights and finally struck another car head on, however his conduct was held to not satisfy the depraved mind element because he swerved to attempt to avoid striking a squad car. The court stated that this action "indicates some regard for the life of the victim." Defendant argues that if the facts in *Balistreri* were insufficient to constitute a "depraved mind," then the evidence must be similarly insufficient in this case. The defendant stresses that it was dark at 4:15 in the morning, defendant's headlights were off, and Officer Malinski was not carrying a flashlight.

Once again this is an issue on which the jury had a reasonable basis to infer that defendant did see or was aware of the approaching officer. There is testimony that the defendant's car could have continued in a direct line and it would have been able to exit the vacant lot.

But instead, it made a sharp turn and headed directly towards Officer Malinski. He testified that he could see two black males inside the car while it was heading towards him. It was not an unreasonable inference for the jury to conclude that defendant could also see the officers when they turned and headed at him. It is also a permissible and reasonable inference that the defendant was aware that officers were approaching the car and that the manner in which the Cadillac was driven constituted conduct imminently dangerous to another, evincing a depraved mind regardless of life and that the conduct did endanger the officer.

Again, the issue on appeal is not how the appeals court would weigh the evidence, nor how this court would, but whether a rational jury could reasonably find guilt beyond a reasonable doubt. The court of appeals did not comply with this standard when it wrote that, "[i]t is entirely possible that Toliver or his companion could not have seen the officers." The possibility that evidence produced by the state did not satisfy the burden as to one or more elements is not the test. Upon appeal or review, the issue is whether there was sufficient, credible evidence and reasonable inferences therefrom to convince the jury of defendant's guilt beyond reasonable doubt. We conclude the evidence to be sufficient for this purpose.

*By the Court.*—Reversed and remanded to the Court of Appeals for a consideration of the other issues not dealt with in its decision.