STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Jon C. PEOTTER, Defendant-Appellant.

Supreme Court

*No. 81–032–CR.  Argued June 4, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 265.)

For the plaintiff-petitioner there was a brief by *Thomas A. Maroney,* district attorney, and *John C. Perry,* both of Waupaca, and oral argument by *Mr. Perry.*

For the defendant-appellant there was a brief by *Steven D. Shambeau* and *Johnson, Hansen, Shambeau & Johnson, S.C.,* of Waupaca, and oral argument by *Steven D. Shambeau.*

WILLIAM G. CALLOW, J. This is a review of an August 21, 1981, unpublished decision of the court of appeals reversing the judgment of the Waupaca county circuit court Judge Nathan E. Wiese. We reverse the decision of the court of appeals and affirm the judgment of the circuit court.

The trial court found the defendant guilty of violating sec. 346.63(1), Stats., which prohibits the operation of a motor vehicle while under the influence of an intoxicant.[1] This violation constitutes the defendant's second offense within the past five years. Consequently, his driver's license was revoked for one year, and he was sentenced to pay a fine of $250, plus court costs, or in default of payment to serve thirty days in the Waupaca County jail.[2] The court of appeals reversed the convic-

---

[1] Sec. 346.63(1), Stats., provides:

"346.63 **Operating under influence of intoxicant.** (1) No person may drive or operate a motor vehicle while under the influence of an intoxicant or a controlled substance."

[2] Correspondingly, sec. 346.65(2)(a)2, Stats., authorizes the penalty for a second violation (within the past five-year period) of sec. 346.63(1). Sec. 346.65(2)(a)2 provides:

"346.65 **Penalty for violating sections 346.62 to 346.64. . . .**

"(2)(a) Any person violating s. 346.63(1):

". . .

"2. Shall be fined not less than $250 nor more than $1,000 and imprisoned not less than 5 days nor more than 6 months if the total of revocations under s. 343.305 and convictions for violation of s. 346.63(1) or local ordinances in conformity therewith equals 2 within a 5-year period, except that revocations and convictions

tion, holding that the state did not sustain its burden of proof in establishing that the defendant had been operating the vehicle in question. We reverse, finding that the court of appeals exceeded its scope of review. Accordingly, we affirm the trial court's conviction.

The issues presented on review are: (1) Did the trial court properly consider the chemical analysis of the defendant's blood in the absence of proof that the analyst possessed a current permit issued by the Department of Health and Social Services, as required pursuant to sec. 343.305 (10) (a), Stats.?[3] We agree with both the trial court and the court of appeals in holding that the defendant waived this objection by failing to interpose it at trial in a timely manner. (2) Did the court of appeals err in predicating its reversal on the possibility that a theory of innocence existed, thereby negating the trial court's conviction? We hold that the court of appeals, in misapply-

arising out of the same incident or occurrence shall be counted as one. The 5-year period shall be measured from the dates of the refusals or violations which resulted in the revocations or convictions."

[3] Sec. 343.305 (10) (a), Stats., provides:

"343.305 **Revocation of license on refusal to submit to tests.**

". . . .

"(10) (a) Chemical analyses of blood or urine to be considered valid under this section shall have been performed substantially according to methods approved by the laboratory of hygiene and by an individual possessing a valid permit to perform the analyses issued by the department of health and social services. The department of health and social services shall approve laboratories for the purpose of performing chemical analyses of blood or urine for alcohol or controlled substances and shall develop and administer a program for regular monitoring of the laboratories. A list of approved laboratories shall be provided to all law enforcement agencies in the state. Urine specimens are to be collected by methods specified by the laboratory of hygiene. The laboratory of hygiene shall furnish an ample supply of urine and blood specimen containers to permit all law enforcement officers to comply with the requirements of this section."

ing this theory to the facts adduced at trial, exceeded its scope of review.

The factual sequence underlying this controversy is basically undisputed. A two-car collision occurred on June 23, 1980, at approximately 12:50 a.m., in Waupaca county. The driver of one of the vehicles, William J. Tenney, testified that he was driving west on Highway 10. Suddenly an approaching vehicle veered into his lane. Tenney, in a futile attempt to avoid the oncoming truck, headed for the shoulder of the eastbound lane. The vehicles collided in the westbound lane, spinning the defendant's truck into the eastbound lane, facing west. Tenney testified that everything was "happening so fast." He further testified that immediately following the collision he saw the defendant, seriously injured, lying ten feet behind the truck which he was allegedly operating. The defendant had suffered a skull fracture and was bleeding.

Officer Larry Strauss arrived at the scene at approximately 12:53 a.m. Tenney and Officer Strauss testified that, immediately following the collision, aside from the passengers in Tenney's car, the defendant was the only person present at the scene of the accident. Shortly thereafter, Tenney observed other traffic on the highway. Officer Strauss testified that during the course of his investigation he "spotted a bystander. [H]e told him [the bystander] to make sure the gentleman [the defendant] did not get up." The bystander left the scene of the accident without speaking to anyone.

Noting the defendant's injuries, Officer Strauss returned to his squad car to request an ambulance. Immediately thereafter he returned to the highway where the defendant "was up attempting to walk around but had a very hard time maintaining his balance. I—he was bouncing more or less off the truck. I grabbed at the

subject and stated he had to lay down because of his injuries. We had no idea what his injuries were and he should remain laying down until the ambulance did arrive." The officer further testified that he "could not understand his speech. It was very slurred and hard to understand. I did observe the odor of alcoholic beverage on his breath at that time." Additionally, the officer remained with the defendant until the ambulance arrived and testified that the defendant did not drink any alcoholic beverage during that time.

The defendant was taken by ambulance to Riverside Hospital where Dr. Lochner examined him. Upon obtaining skull X-rays, Dr. Lochner determined that the defendant was suffering from a skull fracture. Believing that "there was [a] reasonable likelihood [that] he might need emergency surgery," Dr. Lochner "elected to transfer him to Neenah for observation by a neurosurgeon." Dr. Lochner further testified that the skull fracture could have caused the defendant's "bouncing around by his truck" after the collision. Dr. Lochner continued that it was his opinion "that there was a reasonable possibility" that the defendant was under the influence of an intoxicant. Dr. Lochner detected the odor of alcoholic beverage on the defendant's breath. Additionally, he withdrew a blood sample from the defendant at 2:55 a.m. "which had a result of an ethanol level of 0.171% by weight."[4]

---

[4] Pursuant to sec. 346.63 (4), Stats., 0.1 percent by weight of alcohol constitutes legal intoxication. Accordingly, the defendant's blood alcohol level of 0.171 percent by weight exceeded the statutory limitation, indicating that he was legally intoxicated. Sec. 346.63 (4) provides:

"(4) A person whose blood contains 0.1% or more by weight of alcohol is under the influence of an intoxicant for purposes of this section. Notwithstanding s. 885.235 (1) (c), a chemical analysis of a person's blood, breath or urine which has been admitted into evidence and which shows that there was 0.1% or more by

A drug and alcohol analyst with the State Laboratory of Hygiene, Thomas C. Doran, was called to testify as the state's last witness.[5] Doran received the defendant's

weight of alcohol in the person's blood is sufficient evidence, without corroborating physical evidence, on which to base a finding that the person's blood contained 0.1% or more by weight of alcohol."

[5] The collision occurred at approximately 12:50 a.m., and the blood alcohol test was performed at approximately 2:55 a.m. Sec. 885.235(3), Stats., requires expert testimony to establish the probative value of the specimen to be proven if it is not taken within two hours of the event. Sec. 885.235(3) provides:

"(3) If the sample of breath, blood or urine *was not taken within 2 hours after the event to be proved,* evidence of the amount of alcohol in the person's blood as shown by the chemical analysis is admissible only if expert testimony establishes its probative value and may be given prima facie effect only if such effect is established by expert testimony." (Emphasis added.)

If the sample is taken within two hours of the event to be proven, sec. 885.235(1), Stats., vitiates the requirement of expert testimony to establish the specimen's probative value. Sec. 885.235(1) provides:

"885.235 **Chemical tests for intoxication.** (1) In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant when operating or driving a motor vehicle, or while handling a firearm, evidence of the amount of alcohol in such person's blood at the time in question as shown by chemical analysis of a sample of his breath, blood or urine is admissible on the issue of whether he was under the influence of an intoxicant if such sample was taken *within 2 hours after the event to be proved.* Such chemical analysis shall be given effect as follows *without requiring any expert testimony as to its effect."* (Emphasis added.)

It is the legislature's prerogative to establish the conditions relating to the admissibility of blood alcohol results and when the accompanying testimony of an expert is required. We note that the legislature has recently reconsidered this time limit and has extended the two-hour limitation to three hours before requiring expert testimony. Sec. 885.235(3), Stats., as amended, provides:

"(3) If the sample of breath, blood or urine was not taken within 3 hours after the event to be proved, evidence of the

blood sample on June 24, 1980, and performed a gas chromatography technique on the specimen which revealed a blood ethanol level of 0.171 percent by weight. Although Doran testified as to his educational and employment history, there was no proof or correlative objection at that time that he possessed a valid permit pursuant to sec. 343.305 (10) (a), Stats.

The case was tried without a jury. The defendant was found guilty and appealed. The court of appeals reversed the conviction. In this review the state alleges that the court of appeals has exceeded its scope of review in predicating its reversal on the existence of a possible, rather than a reasonable, hypothesis of innocence. Correspondingly, the defendant cross-appeals, contending that the state failed to prove, beyond a reasonable doubt, that the defendant committed the offense. Additionally, the defendant alleges that the chemical analysis of his blood was improperly considered by the trial court in the absence of proof that the analyst possesses a valid permit, pursuant to sec. 343.305 (10) (a), Stats.[6]

---

amount of alcohol in the person's blood or breath as shown by the chemical analysis is admissible only if expert testimony establishes its probative value and may be given prima facie effect only if the effect is established by expert testimony except for offenses specified in ss. 346.63 (1) and (2) (a), 940.09 (1) and 940.25 (1)."

[6] At trial Doran failed to furnish proof that he possessed a valid permit. He did have a valid blood alcohol analysis permit, authorized by the Wisconsin Department of Health and Social Services, on June 24, 1980, when he analyzed the defendant's blood specimen. The state, in its brief, has proposed that this court take judicial notice of Doran's valid permit, pursuant to sec. 902.01 (2), Stats. See e.g., State v. Wachsmuth, 73 Wis. 2d 318, 331–32, 243 N.W.2d 410 (1976); Perkins v. State, 61 Wis. 2d 341, 346, 212 N.W.2d 141 (1973). The state has provided this court with a certified copy of Doran's current permit, a copy of his application for the renewal of his permit in 1980, and a sworn statement by Doran stating that his permit has been renewed annually since its initial issuance in 1977. Additionally, a sworn affidavit from Radleigh Becker, the chemistry supervisor from the Wisconsin

Doran, a technician with the State Laboratory of Hygiene, testified that his analysis revealed that the defendant's blood ethanol level was 0.171 percent by weight. The defendant did not interpose a timely objection to Doran's testimony; however, he mentioned in his closing argument that failure to comply with the statutory requisites contained in sec. 343.305(10)(a), Stats., rendered the results of the chemical analysis invalid. Conversely, the state contends, and we agree, that the defendant's failure to object to the admissibility of these results constituted a waiver on this issue of admissibility.

■

The defendant contends that the mandatory language contained in sec. 343.305(10)(a), Stats., requires that, for the court to give any weight to the testimony of the technician performing the chemical analysis, the party offering the testimony must introduce evidence that on the date the test was conducted the technician possessed a valid permit issued by the Department of Health and Social Services. Although a literal reading of the statute is susceptible to the defendant's interpretation, his failure to object to the admissibility of the analyst's results in a timely fashion precludes him from raising this objection on appeal. *See Bennett v. State*, 54 Wis. 2d 727, 735–36, 196 N.W.2d 704 (1972) (adversary's failure to object at the introduction of objectionable testimony results in a waiver of any contest to that testimony.

We hold that the dispute regarding the validity of the technician's permit in this case focuses on the founda-

Laboratory of Hygiene, was submitted which corroborated the fact that Doran held a valid analyst's permit on June 24, 1980. "Becker is responsible for approving the issuance of blood/alcohol permits to employees of the State Laboratory of Hygiene." Accordingly, Becker had approved the issuance of Doran's blood alcohol permit which was valid on June 24, 1980. We need not reach the issue of judicial notice, however, as the defendant's failure to interpose a timely objection to this foundational evidence disposes of this issue.

tional nature rather than the admissibility of his testimony. We adhere to the well-established principle that "[a] rule of Evidence not invoked is *waived.*" 1 Wigmore, *Evidence,* sec. 18 at 321 (3d ed. 1940) (emphasis in original). Dean Wigmore, in his treatise on the law of evidence, discusses the necessity of a timely objection.

"§ 18. *The Objection.* The initiative in excluding improper evidence is left to the opponent,—so far at least as concerns his right to appeal on that ground to another tribunal. The judge may of his own motion deal with offered evidence; but for all subsequent purposes it must appear that the opponent invoked some rule of Evidence. A rule of Evidence not invoked is *waived.*"

*Id.* (emphasis in original). *E.g., Bennett v. State,* 54 Wis. 2d at 735–36; *Nadolinski v. State,* 46 Wis. 2d 259, 267–68, 174 N.W.2d 483 (1970). We adhere to the well-established principle in Wisconsin and traditional evidentiary law in holding that the defendant's failure to object to the absence of foundational testimony precludes him from asserting his objection on appeal.

The court of appeals erroneously predicates its reversal on its own independent review of the evidence presented at trial. We recently reversed the court of appeals in *State v. Toliver,* 104 Wis. 2d 289, 311 N.W.2d 591 (1981), for substituting its judgment for that of the fact finder at trial. We have articulated the applicable test in reviewing the sufficiency of the evidence in *Toliver,* holding that:

" '[The appellate court does] not sit as a judge or jury making findings of fact. Such findings have already been made, in this case by a jury, and our function in reviewing those findings is simply to decide "whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendants' guilt beyond a reasonable doubt." *Lock v. State,* 31 Wis. 2d 110, 114, 142 N.W. 2d 183 (1966). As we have frequently observed, " '. . . The test is not whether this court is convinced of the guilt of the defendant beyond a reason-

able doubt but whether this court can conclude the trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true.' " *Id.* at 114–115; *Krueger v. State,* 84 Wis. 2d 272, 282–83, 267 N.W.2d 602 (1978).' *State v. Ehlenfeldt,* 94 Wis. 2d 347, 360, 288 N.W.2d 786 (1980)."

*Id.* at 292–93. The *Toliver* standard of appellate review, well-established in Wisconsin law, adheres to the United States Supreme Court's interpretation of the sufficiency rule.[7]

This court has clarified the standard of review in criminal cases in stating that "[r]easonable doubt need

---

[7] The United States Supreme Court recently held in *Jackson v. Virginia,* 443 U.S. 307 (1979) :

"After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS,* 385 U.S., at 282 (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana,* 406 U.S., at 362. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law."

*Id.* at 318–19 (footnotes omitted) (*quoted in State v. Toliver,* 104 Wis. 2d 289, 293, 311 N.W.2d 591 (1981)).

'. . . not exclude every possible doubt but is rather that degree of moral certitude based on convincing reason and excluding all doubt as to the existence of a different conclusion based on reasons.' *State v. Clark,* 87 Wis. 2d 804, 814, 275 N.W.2d 715, 720 (1979)." *Day v. State,* 92 Wis. 2d 392, 400, 284 N.W.2d 666 (1979). In *Day* and its progeny, we have further defined the scope of appellate review: " '. . . It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the factfinder, who has the great advantage of being present at the trial.' " *Id.* at 400 (*citing Simos v. State,* 53 Wis. 2d 493, 495, 192 N.W.2d 877, (1972) ; *Gauthier v. State,* 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965) ). This court has consistently held that " '[t]his ultimate test is the same whether the trier of facts is a court or a jury.' " *Krueger v. State,* 84 Wis. 2d 272, 282, 267 N.W.2d 602 (1978) (*quoting Lock v. State,* 31 Wis. 2d 110, 114, 142 N.W.2d 183 (1966) ).

In this case, although the court of appeals articulates the appropriate standard of review, it exceeds its authority in misapplying this standard. Reversing this case, prior to our decision in *Toliver,* the court of appeals employs the standard we articulated in *Peters v. State,* 70 Wis. 2d 22, 233 N.W.2d 420 (1975). *Peters* states that:

"[W]hen circumstantial evidence is relied upon, this evidence must be sufficiently strong to exclude every reasonable hypothesis of innocence. This does not mean that, if *any* of the evidence brought forth at trial suggests innocence, the jury cannot find the defendant guilty. The function of the jury is to decide which evidence is credible and which is not, and how conflicts in the evidence are to be resolved. The jury can thus, within the bounds of reason, reject testimony suggestive of innocence. The rule that the circumstantial evidence must exclude every reasonable theory of innocence refers to the

evidence which the jury could have believed and relied upon to support its verdict."

*Id.* at 34 (emphasis in original) (footnote omitted).

In the present case our affirmance of the trial court's conviction adheres to *Toliver, Peters,* and their progeny. Although there was no testimonial evidence specifically establishing that the defendant was the driver or owner of the truck, the absence of such testimony is insufficient to warrant reversal of the finding of guilt upon the evidence which was presented to the court. The court of appeals views the bystander's presence as supportive of the possible hypothesis that the bystander was the driver of the truck. The *possible* hypothesis doctrine was expressly rejected by this court in *Toliver.* Accordingly, reversal on that ground is not warranted in this case.

The record indicates that the defendant was present at the scene of the accident and suffered serious injuries. No alternative explanation concerning these injuries was offered or suggested by the evidence. The possibility that someone else was driving and that the defendant was a passenger was negated by the testimony of Tenney and Officer Strauss who said that the defendant was the only person (other than the two passengers in Tenney's car) at the scene immediately after the accident. There was credible circumstantial evidence that the defendant was the driver and direct evidence of his blood alcohol level of 0.171 percent by weight.

The trial court found that the state proved the elements of the crime beyond a reasonable doubt. Our review of the record clearly establishes that the trial court, "acting reasonably could be convinced to that degree of certitude which the law defines as 'beyond a reasonable doubt' " that the defendant was guilty. *State v. Burkman,* 96 Wis. 2d 630, 643, 292 N.W.2d 641 (1980). The court of appeals is the reviewing court, not the fact

finder. Consequently, it cannot independently review the facts, determine the existence of a *possible* theory of innocence, and substitute its judgment for that of the trial court.

In summary, we hold that the defendant's failure to interpose a timely objection to the absence of foundational testimony precludes him from raising this issue on appeal. Further, we hold that the court of appeals has exceeded the scope of review, pursuant to Wisconsin law, enunciated in our recent holding in *State v. Toliver, supra.* Accordingly, we sustain the judgment of the trial court.

*By the Court.*—The decision of the court of appeals is reversed, and the judgment of the trial court is affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring in part and dissenting in part).* I agree with the majority that the defendant failed to preserve his objection to the introduction of the evidence. I take issue with the majority reviewing the sufficiency of the evidence, a task this court generally refuses to undertake. *Winkie, Inc. v. Heritage Bank,* 99 Wis. 2d 616, 621–22, 299 N.W.2d 829 (1981). See also *State v. Stanfield,* 105 Wis. 2d 553, 565, 314 N.W.2d 339 (1982) (Abrahamson, J. dissenting). It is clear from the opinion of the court of appeals that the court of appeals applied the correct standard of review.* Therefore, no reason exists in this case to depart

---

* The court of appeal's entire discussion of the sufficiency of the evidence is as follows:

"The finding that the appellant was the operator of a motor vehicle rests on circumstantial evidence. Appellant contends that evidence is insufficient to establish his guilt.

"The question on review is whether the circumstantial evidence of appellant's guilt is sufficiently strong to exclude "every reasonable hypothesis of innocence." *Peters v. State,* 70 Wis. 2d 22, 34, 233 N.W.2d 420, 426 (1975). The scope of our review is whether the evidence, when viewed most favorably to the state, is such that the trier of fact could be convinced beyond a

from our general rule, except that the majority obviously disagrees with the conclusion reached by the court of appeals and wishes to undertake its own independent review of the evidence presented at trial. This temptation should be resisted. As Justice Stevens of the United States Supreme Court has said:

"No judicial system is perfect and no appellate structure can entirely eliminate judicial error. Most certainly, this court does not sit primarily to correct what we perceive to be mistakes committed by other tribunals. Although our work is often accorded special respect because of its finality, we possess no judicial monopoly on either finality or respect." *Watt v. Alaska,* 451 U.S. 259, 101 S Ct 1673, 1682–83 (1981) (Stevens, J. concurring opinion).

If the majority is saying the court of appeals used the wrong standard of review, I remind the majority that

---

reasonable doubt that appellant operated a vehicle under the influence. *State v. Burkman,* 96 Wis. 2d 630, 645, 292 N.W.2d 641, 648 (1980).

"Mr. William Tenney testified that about 12:50 a.m., June 23, 1980, he was driving his Oldsmobile west on Highway 10 in Waupaca County when an eastbound pickup truck collided with the Oldsmobile, that after the accident he saw defendant lying on the ground in the vicinity of the truck, and that no other person was in the immediate area. The truck had been eastbound and invaded the westbound lane. Tenney veered south to avoid the truck, hit its passenger side, and ended up with the front of the Oldsmobile over the shoulder in the ditch. The truck ended up on the eastbound lane. Tenney did not leave his Oldsmobile until the first officer arrived. That officer testified that the persons at the scene consisted of Tenney, two women passengers sitting in his car, one bystander and appellant, who was lying ten feet behind the truck on the shoulder of the eastbound lane. The truck was facing west. The officer testified that appellant was bleeding about his head. The officer told the bystander to tell appellant not to get up. Defendant made no admissions after the accident. Neither appellant nor the bystander testified, no witness testified to having seen appellant drive, and the ownership of the truck is not of record.

"the language of an opinion is not always to be parsed as though we were dealing with language of a statute." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341 (1979).

"The conclusion is irresistible that appellant was *in* the truck when it collided with the Oldsmobile. Had no bystander been present when the officer arrived, the evidence would have excluded any reasonable hypothesis that a person other than appellant drove or operated the truck just before its collision. But the evidence fails to exclude the possibility that the bystander could have been the driver of the truck. The circumstantial evidence that appellant drove the truck is therefore insufficient."