STATE of Wisconsin, Plaintiff-Respondent,

v.

Keith A. WIEDMEYER, Defendant-Appellant.†

Court of Appeals

*No. 2015AP579–CR. Submitted on briefs February 10, 2016.
—Decided May 18, 2016.*

2016 WI App 46

(Also reported in 881 N.W.2d 805.)

---

† Petition for Review Filed.

---

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Brian Borkowicz* of *Law Office of John A. Best* of West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Michael C. Sanders*, assistant attorney general.

Before Reilly, P.J., Gundrum and Hagedorn, JJ.

¶ 1. HAGEDORN, J. WISCONSIN STAT. § 343.305 (2013–14)[1] is sometimes referred to as the "implied consent statute."[2] It generally provides that drivers who use Wisconsin roads consent to drug and alcohol testing, and dictates various procedures and consequences related to testing. This case is about

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] *See, e.g., State v. Reitter*, 227 Wis. 2d 213, 217, 595 N.W.2d 646 (1999).

§ 343.305(6)(a), which prescribes various permitting requirements for tests to be "valid under this section." The question before us is whether the results of chemical tests for controlled substances that did not comply with the requirements of para. (6)(a) are admissible on the charge of operating a motor vehicle while intoxicated (OWI). The defendant, Keith A. Wiedmeyer, moved to suppress his tests results on this ground. The circuit court denied Wiedmeyer's motion, and we granted leave to file this permissive appeal.[3] We affirm and hold that test results failing to meet the requirements of para. (6)(a) are nevertheless admissible if the State otherwise lays the proper foundation.

## *Background*

¶ 2. According to the complaint, Wiedmeyer was involved in an accident when he rear-ended another vehicle twice. Wiedmeyer claimed that he sneezed a few times, and when he looked up the other vehicle was directly in front of him. However, after the accident, a witness described Wiedmeyer as "wobbling" around the area. The officer on the scene stated that Wiedmeyer and his vehicle smelled like marijuana. Wiedmeyer volunteered that he had been taking some prescription medications, and that his doctor had advised him not to drive. Based on this admission, he was subsequently charged with one count of OWI under Wis. Stat. § 346.63(1)(a) and one count of operating while revoked under Wis. Stat. § 343.44. Wiedmeyer's blood was later tested several times—once for alcohol, which came back negative, and twice for controlled substances. The tests for controlled substances revealed the presence of morphine and zolpidem.

---

[3] *See* Wis. Stat. Rule 809.50(3).

¶ 3.   Broadly speaking, Wis. Stat. § 343.305 relates to drug and alcohol testing for users of Wisconsin roads. Its provisions include consent, required notifications, administration of tests, and suspension of licenses. Wiedmeyer bases his appeal on § 343.305(6)(a), which provides:

> (a) Chemical analyses of blood or urine to be considered *valid under this section* shall have been performed substantially according to methods approved by the laboratory of hygiene and by an individual possessing a valid permit to perform the analyses issued by the department of health services. The department of health services shall approve laboratories for the purpose of performing chemical analyses of blood or urine for alcohol, controlled substances or controlled substance analogs and shall develop and administer a program for regular monitoring of the laboratories. A list of approved laboratories shall be provided to all law enforcement agencies in the state. Urine specimens are to be collected by methods specified by the laboratory of hygiene. The laboratory of hygiene shall furnish an ample supply of urine and blood specimen containers to permit all law enforcement officers to comply with the requirements of this section.

*Id.* (emphasis added).

¶ 4.   Although the analyst who tested Wiedmeyer for controlled substances testified that she was qualified, she admitted that she did not have a valid permit from the Department of Health Services (DHS) to conduct tests for controlled substances.[4] As it turns out, DHS does not issue such permits and has never issued them before. In addition, the lab where the testing was performed was not approved by DHS

---

[4] She did, however, have a permit to test for alcohol.

190

because DHS does not approve laboratories as contemplated by the statute. Based on these deficiencies, Wiedmeyer moved to suppress the test results, arguing that the results were "invalid" under WIS. STAT. § 343.305(6)(a) and thus inadmissible against him.

¶ 5. The circuit court rejected Wiedmeyer's argument and concluded that the results were not inadmissible. The court reasoned that WIS. STAT. § 343.305(6)(a) only applied to "this section," and because Wiedmeyer was not being prosecuted under § 343.305, the results were not necessarily inadmissible. The court also concluded that Wiedmeyer's view would lead to absurd results considering the objective of WIS. STAT. § 967.055 "to encourage the vigorous prosecution" of OWI offenses. As a third rationale, the court surmised that § 343.305(6)(a) "might be inoperable for the want of a subject." Wiedmeyer then sought a permissive appeal which we granted.

## Discussion

¶ 6. Neither party disputes that the testing in this case failed to comply with WIS. STAT. § 343.305(6)(a). Thus, the only question is whether this failure precludes admission of the results. This is a question of statutory interpretation which we review de novo. *See State v. Nellessen*, 2014 WI 84, ¶ 13, 360 Wis. 2d 493, 849 N.W.2d 654.

¶ 7. Wiedmeyer's argument is premised on the proposition that an "invalid" test under WIS. STAT. § 343.305(6)(a) is an inadmissible test in an OWI prosecution. Paragraph (6)(a) sets the standard for the evidentiary validity of chemical tests for intoxication,

191

according to Wiedmeyer—at least for tests of controlled substances. Thus, he argues that the requirements in para. (6)(a) are foundational and exclusive; the State must prove compliance to have its test results admitted. Any other interpretation, he asserts, leaves para. (6)(a)—inasmuch as it relates to the validity of test results—without meaning. He further supports his argument by appealing to § 343.305(5)(d), which affirmatively grants admission to test results conducted pursuant to para. (6)(a). Wiedmeyer also disagrees with the circuit court's conclusion that his interpretation would violate public policy, and that para. (6)(a) is inoperative for want of a subject.[5]

¶ 8. The plain language of Wis. Stat. § 343.305(6)(a) states that testing must meet certain requirements "to be considered valid under this section." *Id.* The obvious, and in our view correct, inference is that validity applies only to "this section"—§ 343.305 —not other statutes. The testing requirements of § 343.305(6)(a), therefore, do not preclude admission of noncomplying tests. Other statutory provisions establishing a sufficient foundation are in full force and effect. One example would appear to be Wis. Stat. § 907.02—permitting scientific testimony if it would be helpful to the trier of fact.

¶ 9. Contrary to Wiedmeyer's concern, this reading gives Wis. Stat. § 343.305(6)(a) a clear meaning and

---

[5] Citing *State ex rel. Spaulding v. Elwood*, 11 Wis. 17 (1860), the circuit court reasoned that because DHS does not issue permits for controlled substances testing, the subject matter of Wis. Stat. § 343.305(6)(a)—which requires permits— did not exist. We need not address this in detail because we affirm on other grounds. We do, however, note that the failure of DHS to maintain a permitting process simply means that DHS has failed to comply with the law, not that the statute lacks a subject.

application. If testing is administered in accordance with § 343.305(6)(a), then § 343.305(5)(e) specifies that the results "shall be given the effect required under [Wɪs. Sᴛᴀᴛ. §] 885.235." Sec. 343.305(5)(e). Section 885.235 in turn provides that evidence of alcohol in a person's system "is admissible" to prove intoxication, and the court shall treat test results showing the presence of a restricted controlled substance as "prima facie evidence" of a detectible amount of a restricted controlled substance. Sec. 885.235(1g), (1k).

¶ 10. Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 343.305(5)(d) does not help Wiedmeyer's argument. It provides that if testing for controlled substances is done in accordance with § 343.305(6)(a), then the results "are admissible" at an OWI trial. Sec. 343.305(5)(d).[6] Wiedmeyer reasons that because para. (5)(d) grants admissibility for results in compliance with para. (6)(a), test results that do not comply with para. (6)(a) must therefore *not* be admissible. The rules of logic do not work this way. This is the logical fallacy of denying the antecedent.[7] Another

---

[6] Wɪs. Sᴛᴀᴛ. § 343.305(5)(d) provides:

> (d) At the trial of any . . . criminal action . . . arising out of the acts committed by a person alleged to have been driving or operating a motor vehicle while under the influence of . . . a controlled substance . . . to a degree which renders him or her incapable of safely driving . . . the *results of a test administered in accordance with this section are admissible* on the issue of whether the person was under the influence of . . . a controlled substance . . . .

*Id.* (emphasis added).

[7] In formal logic, this can be presented syllogistically as follows: If P, then Q. Not P. Therefore, not Q. This argument is invalid, i.e., a fallacy. For additional recreational reading, *see also* Stephen M. Rice, Conventional Logic: *Using the Logical Fallacy of Denying the Antecedent as a Litigation Tool,* 79 Mɪss. L.J. 669, 682–84 (2010) (explaining that "[t]he fact that B can be inferred from A does not provide any basis to infer that

example of this fallacy would be: "If Wiedmeyer had too much to drink, then he was intoxicated. Wiedmeyer did not have too much to drink. Therefore, he was not intoxicated." This syllogism does not work. While having too much to drink is a sufficient condition to cause intoxication, alcohol is not the only way one can become intoxicated. The facts of this case illustrate the point: the complaint here averred that Wiedmeyer was intoxicated by prescription drugs, not alcohol. Similarly, para. (6)(a) is not the sole means of admissibility for chemical test results. Just because para. (5)(d) provides for admissibility if a certain procedure is followed does not preclude the admission of test results through another route.[8]

¶ 11. Case law does not say to the contrary. Wiedmeyer argues that *State v. Peotter*, 108 Wis. 2d 359, 321 N.W.2d 265 (1982), the only published decision on point, stands for the proposition that the testing requirements of Wis. Stat. § 343.305(6)(a) are foundational, and the failure to comply with those requirements renders the results inadmissible. But the issue in *Peotter* was whether the State's failure to

anything can be inferred from the absence of A"); Denying the Antecedent, http://rationalwiki.org/wiki/Denying_the_antecedent (last visited May 16, 2016) (explaining that denying the antecedent confuses the effects of denying an "if" statement with an "if-and-only-if" statement).

[8] One might counter with the longstanding canon of construction that the mention of one thing implies the exclusion of others (in Latin, *Expressio Unius Est Exclusio Alterius*). *See* Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation of Legal Texts 107 (2012). The implication of this canon here, however, is that noncomplying test results are not admissible under Wis. Stat. § 343.305(5)(d), not that the results are inadmissible under any statute. Nothing in § 343.305(5)(d) prevents the admission of the results through another statute.

prove the admitted tests complied with the requirements of para. (6)(a) meant the results must be excluded. *Peotter*, 108 Wis. 2d at 366–67. The supreme court held that failure by the defense to object to the evidence waived any challenge to the validity of the technician's permit because the permit requirement was a foundation issue only, not a prerequisite to admissibility. *Id.* This is consistent with our holding. The requirements of para. (6)(a) relate to foundation. The court did not say, imply, or hint that these foundation requirements are exclusive and required in order to admit any chemical tests. That was left for another day—today. Nothing in § 343.305 and nothing in *Peotter* prevents the State from seeking to admit the results through other means.[9]

¶ 12.   In short, Wiedmeyer argues that in order for test results to be admitted, the State must lay the foundation required by Wis. Stat. § 343.305(6)(a). We conclude, however, that para. (6)(a) establishes a non-exclusive foundation that, if met, permits admissibility. A proper foundation, though, may be established through another statutory mechanism, and if it is, the test results may be admitted.

---

[9] In his reply brief, Wiedmeyer challenges the qualifications of the analyst who conducted the testing and argues that even if Wis. Stat. § 343.305(6)(a) does not preclude admissibility, "the State has still not established a foundation for [the results] to be admitted." The hearing on his motion to dismiss concerned only whether the test results are inadmissible under § 343.305(6)(a), not whether the State had generally established a foundation for the evidence. Because Wiedmeyer did not raise this argument at the circuit court, we decline to address it here. *See Wisconsin Dep't of Taxation v. Scherffius*, 62 Wis. 2d 687, 696–97, 215 N.W.2d 547 (1974). We also note that the trial has not even occurred; we granted permissive appeal. Wiedmeyer is free to challenge admissibility based on the analyst's qualifications at trial if he so chooses.

¶ 13. Finally, we see no need to address the public policy implications of Wiedmeyer's proffered interpretation. The court and the parties debated whether Wiedmeyer's approach furthered the general objective of "vigorous prosecution" of OWI's under WIS. STAT. § 967.055. This is not the relevant inquiry. The text of WIS. STAT. § 343.305 revealed the legislature's public policy decision. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110 ("Judicial deference to the policy choices enacted into law by the legislature requires that statutory interpretation focus primarily on the language of the statute."). The proper question is simply what § 343.305 means. Even if the resulting interpretation had caused great inconvenience to OWI prosecutions, this would not render the results absurd. Rather, it would mean that the State—by not establishing the required permit system—was not following the law. It is not up to the courts to rewrite the plain words of statutes to further the public policy goals the legislature hopes to accomplish. Designing a statutory scheme that accomplishes its goals is up to the legislature. Whether they do that well or not, and whether the executive branch complies with statutory directives, is immaterial to the limited judicial task of saying what the law is. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

## Conclusion

¶ 14. Although failure to comply with WIS. STAT. § 343.305(6)(a) rendered the test results of Wiedmeyer's blood invalid under § 343.305, the results are not

per se inadmissible. Should this case proceed to trial, a court may admit the test results if the State finds another way to lay the proper foundation. Accordingly, we affirm the circuit court's denial of Wiedmeyer's motion in limine.

*By the Court.*—Order affirmed.