COURT OF APPEALS
DECISION
DATED AND FILED

June 4, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP448-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CT282**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHRISTOPHER DREW HELWIG,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Jefferson County: BENNETT J. BRANTMEIER, Judge. *Affirmed.*

¶1 GRAHAM, J.[1] Christopher Helwig appeals a judgment convicting him of operating a motor vehicle while intoxicated (OWI). During his trial, the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

circuit court admitted evidence of his blood alcohol concentration test result without requiring testimony from the registered nurse who collected the sample of his blood. On appeal, Helwig argues that the court erred by admitting evidence of the test result, and also by admitting a form that documents basic details about the arrest and the blood draw. For the reasons that follow, I reject Helwig's arguments and affirm the circuit court.

## BACKGROUND

¶2 After Helwig was arrested for OWI, a sample of his blood was drawn by a registered nurse pursuant to WIS. STAT. § 343.305, commonly referred to as Wisconsin's implied consent law. The arresting officer and the nurse filled out a preprinted "Blood/Urine Analysis" form (the "blood/urine form"). The officer then sent the sample and the blood/urine form to the state laboratory of hygiene, where a lab analyst later determined that Helwig's blood alcohol concentration was .188 grams per 100 milliliters of blood. The analyst prepared a one-page laboratory report stating this result.

¶3 Prior to trial, the parties disagreed about the showing that the State was required to make before the blood test result could be admitted into evidence.[2] This disagreement stemmed from the parties' differing interpretations of WIS. STAT. § 343.305, including its provision that test results "are admissible" if the State shows the blood sample was "administered in accordance with this section." *See* § 343.305(5)(d). Helwig argued that the State had to show that the nurse used certain approved methods when she collected the blood sample. He further argued

---

[2] Separately, Helwig moved to suppress the blood test result on Fourth Amendment grounds, but the circuit court denied his motion and Helwig does not appeal that ruling.

that the nurse was the only person who could testify on this subject, and without her testimony, the test result was hearsay and its admission would violate the Confrontation Clause. The State contended that neither the statute nor the Confrontation Clause required the nurse's testimony.

¶4 Based on documentary evidence submitted by the State, the circuit court found that Helwig's blood "was drawn by a qualified person, namely, a Registered Nurse," and that Helwig had not challenged that fact. The circuit court determined that the nurse was not a "necessary witness," and neither party called the nurse to testify at trial.

¶5 The arresting officer and the lab analyst both testified at the trial. Among other things, the officer described the blood/urine form as a document that "comes in the blood kit," "goes to the State Hygiene Lab," and has "the defendant's name, incident number, my name, that sort of information just so that whoever processes the blood at the State of Wisconsin Hygiene Lab knows whose blood it is." The State moved to admit the blood/urine form, and then later to publish it to the jury. Helwig's attorney did not object to either of these requests, which were granted by the circuit court.

¶6 The lab analyst testified about the procedures he used to analyze the sample and the result of his analysis. In the course of this testimony, the State moved to admit the analyst's one-page laboratory report, and Helwig preserved the objection that the circuit court had previously overruled. The court received the lab report over Helwig's objection. The analyst did not testify about the circumstances of Helwig's blood draw, and on cross-examination, he confirmed that he would have no way of knowing whether the person who drew the blood followed any specific protocol.

3

¶7     The jury found Helwig guilty, and he appeals.

## DISCUSSION

¶8     Helwig argues that the blood/urine form and the test result are inadmissible hearsay, and that the admission of this evidence without the nurse's testimony violated his constitutional right to confront witnesses against him. Because many of Helwig's arguments hinge upon his interpretation of WIS. STAT. § 343.305, I begin by considering the proper interpretation of that statute.

### I.  Interpretation of WIS. STAT. § 343.305

¶9     Statutory interpretation presents a question of law that appellate courts review de novo. *Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852.  When interpreting a statute, we begin with its language, and if the meaning is plain, that ordinarily ends the inquiry. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

¶10    WISCONSIN STAT. § 343.305(5)(d) governs the admissibility of blood, breath, and urine tests obtained under Wisconsin's implied consent law.  If a test is "administered in accordance with" § 343.305, it is "admissible on the issue of whether the person was under the influence of an intoxicant ...." *See* § 343.305(5)(d).  The Wisconsin Supreme Court has explained that a test that complies with the statutory requirements is admissible "by legislative edict." *State v. Disch*, 119 Wis. 2d 461, 473, 351 N.W.2d 492 (1984) (considering an earlier version of the statute with the same admissibility provision).  The question, then, is what § 343.305 requires.

¶11    Helwig argues that WIS. STAT. § 343.305 requires that blood samples be collected properly, according to procedures that were approved by the

state laboratory of hygiene, as a threshold requirement of admissibility. The State contends that § 343.305 requires only that the blood be collected by a person who is statutorily authorized to draw blood. Neither party cites any cases interpreting the relevant statutory language, and this appears to be a question of first impression.[3]

¶12    I begin with WIS. STAT. § 343.305(5), titled "Administering the Test; Additional Tests." Paragraph (5)(a) provides that "[a] blood test is subject to par. (b)." *See* § 343.305(5)(a). Paragraph (5)(b) sets forth the following requirements for blood draws:

> Blood may be withdrawn from the person arrested for [an OWI offense] to determine the presence or quantity of alcohol [or controlled substances] in the blood only by a physician, registered nurse, medical technologist, physician assistant, phlebotomist, or other medical professional who is authorized to draw blood, or a person acting under the direction of a physician.

WIS. STAT. § 343.305(5)(b).

¶13    Plainly, there is nothing in the text of paragraph (5)(b) that requires blood to be drawn in a particular manner or consistent with any particular protocol. *Id.* The sole requirement set forth in paragraph (5)(b) is that the blood was drawn by a person authorized to draw blood. *Id.* Helwig argues that "cases which have directly examined the requirements put forth in WIS. STAT. § 343.305(5)(b) have not held that the testimony of the person drawing the blood

---

[3] The State cites to *State v. Wiedmeyer*, 2016 WI App 46, 370 Wis. 2d 187, 881 N.W.2d 805, but that case does not assist our analysis. In *Wiedmeyer*, we concluded that a test result that does not meet the requirements of WIS. STAT. § 343.305 may be admitted if the State establishes its proper foundation through another route. We did not consider whether that statute requires blood samples to be collected according to approved methods.

was unnecessary," *see, e.g.*, **State v. Penzkofer**, 184 Wis. 2d 262, 516 N.W.2d 774 (Ct. App. 1994), but this argument goes nowhere. There may not be any cases stating that such testimony is unnecessary, but that does not mean that such testimony is required.

¶14    Helwig's argument centers around a different paragraph, WIS. STAT. § 343.305(6)(a), which provides:

> *Chemical analyses of blood or urine* to be considered valid under this section *shall have been performed substantially according to methods approved by the laboratory of hygiene and by an individual possessing a valid permit to perform the analyses* issued by the department of health services. The department of health services shall approve laboratories for the purpose of performing chemical analyses of blood or urine … and shall administer a program for regular monitoring of the laboratories. A list of approved laboratories shall be provided to all law enforcement agencies in the state. Urine specimens are to be collected by methods specified by the laboratory of hygiene. The laboratory of hygiene shall furnish an ample supply of urine and blood specimen containers to permit all law enforcement officers to comply with the requirements of this section.

WIS. STAT. § 343.305(6)(a) (emphasis added).

¶15    Helwig appears to argue that the first sentence of paragraph (6)(a) means that a blood sample must have been collected "substantially according to methods approved by the laboratory of hygiene." However, on its face, the first sentence of paragraph (6)(a) refers to the "chemical analyses" of blood and urine samples, not to their "collection." For Helwig's interpretation to be correct, the term "chemical analyses" would have to mean not just "analysis" but also "collection," even though courts are supposed to avoid reading extra words into a statute. **Lang v. Lang**, 161 Wis. 2d 210, 224, 467 N.W.2d 772 (1991).

¶16　Helwig points to nothing in WIS. STAT. § 343.305 that suggests the legislature intended the term "chemical analysis" to include "collection," and the other sentences in paragraph (6)(a) undermine any such interpretation. *See **Kalal***, 271 Wis. 2d 633, ¶46 ("statutory language is interpreted in the context in which it is used"). For example, blood and urine samples are typically collected in the field or a hospital,[4] but the second sentence of paragraph (6)(a) shows that the legislature understood chemical analysis to be a task performed in a laboratory.[5] And paragraph (6)(a)'s fourth sentence specifically mandates that urine must be collected "by methods specified by the laboratory of hygiene," but it includes no similar language for blood. This demonstrates that the legislature knew how to impose such requirements, but chose not to do so for blood samples. *See **Responsible Use of Rural & Agr. Land v. Public Serv. Comm'n of Wis.***, 2000 WI 129, ¶39, 239 Wis. 2d 660, 619 N.W.2d 888 (when the legislature uses words in one part of a statute but not another part, this shows that "the legislature specifically intended a different meaning").

¶17　Helwig's interpretation of WIS. STAT. § 343.305(6)(a) would also lead to an absurd result. *See **Kalal***, 271 Wis. 2d 633, ¶46. In addition to requiring certain methods for chemical analyses, paragraph (6)(a) requires that such analyses be performed "by an individual possessing a valid permit to perform the analyses issued by the department of health services." The "permit" the statute

---

[4] Breath samples, which are often collected and then immediately analyzed by a law enforcement officer using specified equipment in the field, are addressed in WIS. STAT. § 343.305(6)(b)-(d), which set forth different requirements.

[5] That sentence provides: "The department of health services shall approve laboratories for the purpose of performing chemical analyses of blood or urine ...." WIS. STAT. § 343.305(6)(a).

refers to is a permit issued to laboratory analysts authorizing them to conduct blood alcohol tests. *See* *State v. Wiedmeyer*, 2016 WI App 46, ¶4, 370 Wis. 2d 187, 881 N.W.2d 805. If the statutory term "chemical analyses" also included the "collection" of samples, then blood samples could only be drawn by a qualified person who also had a valid permit to test them. Such an interpretation would impose a needless and burdensome hurdle for police departments seeking to preserve evidence of a suspect's blood alcohol concentration before it dissipates. This could not be the result intended by the legislature.[6]

¶18    In sum, when read together, WIS. STAT. § 343.305(5)(b) and (6)(a) set forth standards for the collection of blood and urine samples, but the standards differ based on the type of sample at issue. Urine samples must be collected according to methods specified by the laboratory of hygiene. Blood samples, by contrast, must be collected by specified medical professionals who presumably have training and experience with appropriate collection methods.[7]    And

---

[6] Helwig asserts that it is the State's interpretation of the statute that would lead to absurd results because it "would allow the test results to be admitted at trial without any testimony from either the person who drew the blood or the person who analyzed the blood." I am not persuaded. The State was allowed to present the test result without the nurse's testimony because it used documentary evidence to prove that the nurse was qualified to administer a blood draw, and Helwig did not dispute the nurse's credentials. But there are additional requirements for introducing the result of a chemical analysis, including the requirement that the analysis was "performed substantially according to methods approved by the laboratory of hygiene." WIS. STAT. § 343.305(6)(a). This requirement may be less susceptible to proof through documentary evidence.

[7] Helwig asserts that the laboratory of hygiene has approved certain methods for the collection of blood samples. Yet, the document he submitted that purportedly sets forth these methods merely provides that the collectors should "[c]ollect the specimen according to [their] institution's protocol," along with generic directions such as "[u]se a disposable, sterile needle" and "[w]rite the subject's name on the label." Rather than setting forth approved collection methods, this document instead appears to leave such methods to the medical institution. But even if the laboratory of hygiene has approved any meaningful blood collection methods, that would not mean that the statute requires a showing that these were followed as a prerequisite to admitting test results.

8

separately, blood and urine samples must both be analyzed "substantially according to methods approved by the laboratory of hygiene and by an individual possessing a valid permit to perform the analyses issued by the department of health services." *See* § 343.305(6)(a). If Helwig believed that the nurse's collection method compromised the integrity of his blood sample, he was free to introduce evidence to support that assertion, and such evidence might have called into question the weight that the jury should give to his test result. But such evidence is not a prerequisite of admissibility under § 343.305(5)(d). *See Disch*, 119 Wis. 2d at 477.

## II. Hearsay

¶19    I now turn to Helwig's arguments about hearsay.[8]   Hearsay is a rule of evidence, and I review the circuit court's evidentiary rulings under an erroneous exercise of discretion standard. *See State v. Nieves*, 2017 WI 69, ¶16, 376 Wis. 2d 300, 897 N.W.2d 363. "The burden to demonstrate an erroneous exercise of discretion rests with the appellant." *Winters v. Winters*, 2005 WI App 94, ¶18, 281 Wis. 2d 798, 699 N.W.2d 229. I will uphold the court's evidentiary rulings if it "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 415, 320 N.W.2d 175 (1982).

¶20    Although Helwig argues that the circuit court erred in admitting the lab report (and presumably any testimony about the blood test result as well), the

---

[8] Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted." *State v. Kreuser*, 91 Wis. 2d 242, 250, 280 N.W.2d 270 (1979). "As a general rule, hearsay is not admissible evidence," *State v. Williams*, 2002 WI 58, ¶34, 253 Wis. 2d 99, 644 N.W.2d 919, but the rule against hearsay is subject to exceptions provided by rule or statute, WIS. STAT. § 908.02.

portions of his appellate briefs that address hearsay actually take aim at a different target, the blood/urine form. As best as I understand it, his argument appears to be that the State used an out-of-court statement (the blood/urine form) to prove that the blood test was "administered in accordance with" the requirements of WIS. STAT. § 343.305, and that makes the test result hearsay. I address the parties' arguments about the blood/urine form and the test result in turn.

## A. The Blood/Urine Form

¶21    As mentioned above, the blood/urine form is a standard form used to document basic details about the arresting officer, the defendant, the collection of a blood or urine specimen, the nature of the requested analysis, and the receipt of the specimen at the laboratory. According to the State, a blood/urine form is generally used to establish "chain of custody" for a blood or urine sample. *See, e.g.*, *State v. Martinez*, No. 2015AP272, unpublished slip op. ¶9 (WI App Aug. 5, 2005) (unpublished one-judge opinion cited for persuasive value under WIS. STAT. § 809.23(3)(b)).

¶22    It is not clear what Helwig hopes to accomplish by challenging the admissibility of the blood/urine form on appeal. Although he argues that the State used hearsay to prove that his blood was collected "substantially according to methods approved by the laboratory of hygiene," the blood/urine form does not actually describe any specific method by which his blood was collected. As it pertains to "specimen collection," the form documents the date and time the specimen was collected and the name, signature, and credentials of the person who collected it. If the State had been required to establish that the blood was collected according to approved methods, the blood/urine form would not have helped the State to make that showing.

10

¶23     In any event, I agree with the State that Helwig forfeited any challenge to the blood/urine form by not objecting to its admission before or during the trial.  As a general rule, when a party fails to raise an issue before the circuit court, the party forfeits that issue on appeal.  *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 & n.21, 327 Wis. 2d 572, 786 N.W.2d 177.

¶24     Helwig asserts that he did not forfeit his objection to the blood/urine form, but he does not identify any place in the record where he challenged its admission, and the transcript clearly shows that he did not object when the State offered it into evidence at trial.  Instead, Helwig's opening brief cites to a portion of the trial transcript where he objected to the admission of the analyst's lab report.  At that point in the trial, the blood/urine form had already been admitted without objection.

¶25     In his reply brief, Helwig appears to argue that the blood/urine form and the lab report are part of the same document, such that his objection to the lab report also constitutes an objection to the blood/urine form.  There are at least three problems with this argument.  First, Helwig does not cite anything in the record that shows that the lab report and the blood/urine form were ever part of the same document.  Second, regardless of whether the two documents had ever been physically connected, they were labeled as separate exhibits and introduced through different witnesses at different points in the trial.  Finally, Helwig points to nothing that logically links the two documents such that any objection to the lab report would also apply to the blood/urine form.  The lab report was created by the lab analyst for the purpose of recording the result of the blood test, while the blood/urine form was created weeks earlier by the arresting officer and nurse for the purpose of establishing the blood sample's chain of custody.

¶26 Forfeiture is a "rule of judicial administration," and I have discretion to overlook a party's failure to raise an issue in the circuit court. *State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702. But Helwig offers no reason why I should overlook his forfeiture, and applying the rule here advances its underlying policies. Had Helwig objected to the blood/urine form as hearsay at trial, the parties and the circuit court would have had a fair opportunity to address the objection, and would perhaps have resolved any issue without the need for an appeal. *State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 (explaining that the forfeiture rule "gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection," "encourages attorneys to diligently prepare for and conduct trials," and "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal"). Accordingly, I decline to address Helwig's arguments about the blood/urine form.

### B. The Blood Test Result

¶27 I now turn to the argument that Helwig advanced in the circuit court—that evidence of the blood test result was inadmissible under WIS. STAT. § 343.305(5)(d) because the nurse did not testify that she collected his blood according to the method approved by the laboratory of hygiene. In the absence of such testimony, Helwig contends that evidence of the test result is hearsay.

¶28 As a threshold matter, the test result was admitted both through the written lab report and through the lab analyst's own testimony. To be sure, the lab report is an out-of-court statement that might be considered hearsay, but Helwig fails to explain how the analyst's in-court testimony about the result of his own analysis could be hearsay. As noted above, the analyst did not testify about the

12

method used to collect Helwig's blood, except to deny any personal knowledge when Helwig's attorney specifically asked him about it on cross-examination.

¶29    In any event, Helwig's argument about the blood test result fails because it depends on an erroneous interpretation of WIS. STAT. § 343.305(5)(d). As explained above, that statute does not require the State to show that Helwig's blood was collected according to approved methods; it instead requires a showing that the blood was drawn by a registered nurse or other authorized person.[9] Helwig has not met his burden to show that the circuit court erroneously exercised its discretion by admitting "hearsay" evidence of the test result.

### III.  Confrontation Clause

¶30    Helwig argues that admission of the blood test result without the nurse's testimony violated the Confrontation Clause.[10]  "While a circuit court's decision to admit evidence is ordinarily a matter for the court's discretion, whether the admission of evidence violates a defendant's right of confrontation is a

---

[9] At times, Helwig appears to hint at other arguments that the State failed to satisfy WIS. STAT. § 343.305(5)(d), including an argument that the State failed to show the nurse had the proper credentials.  I decline to address any potential challenge to the nurse's credentials, since Helwig did not preserve it in the circuit court.  Pretrial, the State submitted the blood/urine form with the nurse's name and a credential summary to show that she was licensed as a registered nurse at the time of the blood draw.  The State argues that the court could consider documentary evidence of the nurse's credentials under WIS. STAT. § 901.04, which allows a court to consider evidence that would not itself be admissible at trial when answering preliminary questions about admissibility.  Helwig acknowledges that the circuit court permitted the State to prove the nurse's credentials through hearsay submissions and that he "did not challenge that fact."

To the extent that Helwig intends to make any other hearsay arguments, or any other argument that the State failed to satisfy § 343.305(5)(d), I decline to address it as insufficiently developed.  *See* **State v. Pettit**, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).

[10] For the same reasons explained in the previous section, I decline to address Helwig's forfeited argument that admission of the blood/urine form violated the Confrontation Clause.

question of law subject to independent appellate review." ***State v. Griep***, 2015 WI 40, ¶17, 361 Wis. 2d 657, 863 N.W.2d 567.

¶31 The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. It is satisfied when a hearsay declarant "appears for cross-examination at trial." ***Crawford v. Washington***, 541 U.S. 36, 59 n.9 (2004). However, if a hearsay declarant is not present at trial, and if the hearsay statement is "testimonial," the Confrontation Clause is satisfied only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *See **id.*** at 58; ***Griep***, 361 Wis. 2d 657, ¶24.

¶32 Helwig's argument is difficult to follow, in part because he does not explain how admission of the blood test result could implicate the Confrontation Clause at all. The lab report that was admitted at trial does not contain any statements (testimonial or otherwise) that were made by the nurse. It instead contains statements made by the lab analyst, and therefore that analyst, not the nurse, is the "declarant" whose absence could implicate the Confrontation Clause. *See **Crawford***, 541 U.S. at 59. But as noted above, the analyst was present at trial and cross-examined by Helwig's counsel.

¶33 In his opening brief, Helwig asserts in conclusory fashion that the nurse was a "necessary State's witness, which subjected her to confrontation (and cross-examination) by the defendant." The opening brief fails to identify anything that would make the nurse "necessary," apart from the interpretation of WIS. STAT. § 343.305(5)(d) that I have already rejected.

¶34 In his reply brief, Helwig suggests the nurse was a "necessary witness" because she was in the blood sample's chain of custody. However, the

Confrontation Clause does not require "that anyone whose testimony may be relevant in establishing the chain of custody … must appear in person as part of the prosecution's case." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009). Helwig cites *Disch*, 119 Wis. 2d at 463, for the proposition that he had the "right to confront and cross-examine all persons in the chain of custody of the original blood sample[.]" But *Disch* addressed the Due Process Clause, not the Confrontation Clause, and in any event, Helwig does not dispute that he had the right to call the nurse to testify. To the extent Helwig intends to argue that due process requires the State to call all individuals in a blood sample's chain of custody in its case-in-chief, I decline to address this argument because Helwig raises it for the first time in his reply brief on appeal. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (we generally do not address issues raised for the first time on appeal in a reply brief). Accordingly, I conclude that admission of the blood test result without the nurse's testimony did not violate the Confrontation Clause.[11]

## CONCLUSION

¶35    For all these reasons, I conclude that Helwig has not shown the circuit court erred when it admitted evidence of the blood test result, and I decline to address Helwig's forfeited arguments regarding the blood/urine form.[12]

---

[11] To the extent that Helwig intends to make other Confrontation Clause arguments, I do not address them because they are not sufficiently developed. *Pettit*, 171 Wis. 2d at 647.

[12] I do not address the State's argument about harmless error because it prevails on other grounds. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.