COURT OF APPEALS
DECISION
DATED AND FILED

July 30, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP1785-CR**

Cir. Ct. No.  **2017CF430**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

V.

TORY J. AGNEW,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dodge County: BRIAN A. PFITZINGER, Judge. *Affirmed*.

Before Fitzpatrick, P.J., Graham, and Nashold, JJ.

¶1     FITZPATRICK, P.J. Tory J. Agnew pleaded no contest in the Dodge County Circuit Court to one count of operating a vehicle while intoxicated,

causing injury, with a minor in the vehicle. *See* WIS. STAT. §§ 346.63(2)(a)1. and 346.65(3m) (2017-18).[1] Agnew's no contest plea included his admission that, because of a prior felony conviction, Agnew was a "repeater."[2] Agnew's status as a repeater increased the amount of imprisonment that may be imposed by the circuit court for that offense. *See* WIS. STAT. § 939.62(1)(b); *see also* WIS. STAT. § 973.01(2)(c). The circuit court imposed a sentence of four years of imprisonment, consisting of three years of initial confinement and one year of extended supervision.

¶2 This appeal concerns how the circuit court may apply the repeater penalty enhancer as part of Agnew's sentence. Agnew argues that his sentence was not lawful because the sentence exceeded the maximum lawful terms of initial confinement and extended supervision. We disagree and affirm the circuit court.

## BACKGROUND

¶3 The charges against Agnew stem from a single motor vehicle crash which resulted in two children being ejected from the vehicle Agnew was driving, causing injuries to the children that included an acute intracranial hemorrhage and a cervical vertebra fracture. Post-crash testing of Agnew's blood showed the presence of a restricted controlled substance. *See* WIS. STAT. § 939.22(33) (defining "[r]estricted controlled substance"). More specifically, Agnew's blood

---

[1] We will sometimes refer to this as the "underlying offense."

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] WISCONSIN STAT. § 939.62(1) and (2) refer to a person who is a "habitual" criminal as a "repeater," and we will use that term to refer to Agnew's status for sentencing purposes.

2

contained a Delta-9-tetrahydrocannabinol concentration of 24 ug/L. *See* § 939.22(33)(e).

¶4 The State filed an information charging Agnew with two counts of causing great bodily harm by the operation of a vehicle while under the influence of a controlled substance, contrary to WIS. STAT. § 940.25(1)(a), and two counts of causing great bodily harm by the operation of a vehicle with a restricted controlled substance in Agnew's blood, contrary to § 940.25(1)(am). For each count, the State alleged, pursuant to WIS. STAT. § 939.62(1)(b), that Agnew was a repeater due to his prior felony conviction.

¶5 Agnew pleaded no contest to an amended charge of operating a motor vehicle while under the influence of a controlled substance, causing injury, with a minor child in the vehicle and as a repeater, contrary to WIS. STAT. §§ 346.63(2)(a)1., 346.65(3m), and 939.62(1)(b). The State dismissed and read into the record the original charges. The circuit court imposed a sentence of four years of imprisonment, consisting of three years of initial confinement and one year of extended supervision.

¶6 In a postconviction motion, Agnew requested resentencing, asserting that "the sentence imposed exceeds the maximum period of initial confinement and extended supervision allowed by law." More particularly, Agnew argued in the circuit court, and argues on appeal, that the maximum lawful aggregate sentence is thirty months of imprisonment, consisting of twenty-four months of initial confinement and six months of extended supervision. The circuit court denied Agnew's motion, and Agnew appeals.

¶7 On appeal, Agnew does not challenge the circuit court's exercise of sentencing discretion. Rather, Agnew challenges whether the circuit court

imposed a lawful penalty-enhanced sentence. We begin by discussing our standard of review and, because this matter requires us to interpret statutes, we also discuss principles which govern our interpretation of statutes.

## DISCUSSION

### I.  Standard of Review and Interpretation of Statutes.

¶8     The interpretation of statutes governing how a penalty enhancer is applied is a question of law subject to this court's independent review. ***State v. Jackson***, 2004 WI 29, ¶11, 270 Wis. 2d 113, 676 N.W.2d 872, *superseded by statute on other grounds as recognized by **State v. Neill***, 2010 WI 15, 390 Wis. 2d 248, 938 N.W.2d 521.

¶9     The goal of statutory interpretation is to discern the intent of the legislature. ***Jackson***, 270 Wis. 2d 113, ¶12. Statutory interpretation begins with the language of the statute and, if the meaning of the statute is plain, we ordinarily end our inquiry. ***State ex rel. Kalal v. Circuit Court for Dane Cty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. Courts interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes." ***Id.***, ¶46. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.***, ¶45; *see* WIS. STAT. § 990.01(1).

¶10     The interpretation and application of sentencing statutes germane to our analysis is undisputed by the parties, and we discuss those statutes next.

## II. Undisputed Interpretation and Application of Sentencing Statutes.

¶11    We first discuss statutes which concern Agnew's underlying offense. We then examine the parties' agreements about the applicable repeater penalty enhancer statutes.

### A. Agnew's Underlying Offense.

¶12    It is unlawful to cause injury to another person by the operation of a vehicle while under the influence of a controlled substance. WIS. STAT. § 346.63(2)(a)1.[3]    That offense is a felony, and the maximum period of imprisonment for that offense is two years, if there was a minor passenger under 16 years of age in the motor vehicle at the time of the violation. *See* § 346.63(2) and WIS. STAT. § 346.65(3m).  Therefore, the maximum period of imprisonment for Agnew's underlying offense was two years.

¶13    The circuit court sentenced Agnew to imprisonment. Except for life sentences, a circuit court imposes an imprisonment sentence that is bifurcated for a felony committed after December 31, 1999. *See* WIS. STAT. § 973.01(1) and (2).[4] Therefore, the circuit court was required to bifurcate Agnew's sentence between initial confinement and extended supervision.

---

[3] Agnew does not dispute that the substance described in ¶3, above, that was found in his blood is a "controlled substance."

[4] *State v. Jackson*, 2004 WI 29, ¶5 n.4, 270 Wis. 2d 113, 676 N.W.2d 872, *superseded by statute on other grounds as recognized by State v. Neill*, 2010 WI 15, 390 Wis. 2d 248, 938 N.W.2d 521, explains:  "Under Truth–in–Sentencing legislation, the term 'imprisonment' does not mean time in prison.  Rather, 'imprisonment' consists of both the time of confinement (in prison) and the time following the confinement spent on extended supervision."  *See also* WIS. STAT. § 973.01(2).

¶14 The bifurcated imprisonment sentence imposed on Agnew must abide by several statutory requirements pertinent to this appeal. WIS. STAT. § 973.01(2). First, the initial confinement term must be no less than one year. Sec. 973.01(2)(b). Second, the sentence of imprisonment must maintain certain ratios between the aggregate bifurcated sentence, the ordered term of initial confinement, and the ordered term of extended supervision. Because Agnew's underlying offense is an unclassified felony, the initial confinement portion of Agnew's bifurcated sentence must be no more than "75 percent of the total length of the bifurcated sentence." Sec. 973.01(2)(b)10.[5] The extended supervision portion of the bifurcated sentence must not be less than twenty-five percent of the ordered term of initial confinement. Sec. 973.01(2)(d).[6]

¶15 So, if Agnew's sentence had not included the repeater penalty enhancer and Agnew had been sentenced to imprisonment on the underlying offense only: (1) the circuit court could have lawfully imposed as little as one year of initial confinement and as much as one year of extended supervision under WIS. STAT. § 973.01(2)(b) and (d); (2) the circuit court could have lawfully imposed up to eighteen months of initial confinement under § 973.01(2)(b)10., because that statutory subpart caps the maximum term of imprisonment at seventy-five percent of the total maximum length of Agnew's bifurcated sentence for the underlying offense (twenty-four months); and (3) if the circuit court had sentenced Agnew to the maximum initial confinement of eighteen months for the underlying offense, a maximum of six months would have been available for a

---

[5] We will sometimes refer to this statutory subpart as the "75 percent requirement."

[6] We will sometimes refer to this statutory subpart as the "25 percent requirement."

6

term of extended supervision, and that six-month term of extended supervision would have complied with the requirement that the extended supervision term be at least twenty-five percent of the initial confinement imposed (eighteen months). Sec. 973.01(2)(d).

## B. Agnew's Penalty Enhancer.

¶16 We now discuss the penalty enhancer statutes pertinent to Agnew's offense.

¶17 The total length of a bifurcated sentence must not exceed the maximum term of imprisonment provided by statute for the underlying offense, "plus additional imprisonment authorized by any applicable penalty enhancement statutes." *See* WIS. STAT. § 973.01(2)(a) and (2)(c)1. Any penalty enhancer is limited to extending the period of initial confinement; the penalty enhancer cannot be divided between initial confinement and extended supervision. *See* § 973.01(2)(c)1. ("Subject to the minimum period of extended supervision required under par. (d) [the 25 percent requirement], the maximum term of confinement in prison specified in par. (b) may be increased by any applicable penalty enhancement statute."). This reading of this statutory subpart was confirmed in *State v. Volk*, 2002 WI App 274, ¶35, 258 Wis. 2d 584, 654 N.W.2d

24 (stating "a penalty enhancer cannot be applied to the term of extended supervision").[7]

¶18 Turning to the specific penalty enhancer at issue here, a term of initial confinement can be increased by a circuit court "by not more than 4 years" if a defendant, such as Agnew, is sentenced as a repeater based on a prior felony conviction. WIS. STAT. §§ 939.62(1)(b) and (2) and 973.01(2)(c)1. Because the bifurcated sentence is subject to the 25 percent requirement, the total amount of felony repeater penalty enhancer that can lawfully be imposed will in some situations be less than four years.

¶19 With those undisputed precepts in mind, we now discuss the parties' disagreement regarding how much of the repeater penalty enhancer may be applied to the initial confinement portion of Agnew's sentence.

### III. Analysis.

¶20 We begin our analysis by reviewing Agnew's argument.

### A. Agnew's Argument.

¶21 Agnew contends that, in calculating how much of the repeater penalty enhancer may be imposed, it must be "deemed" that the circuit court

---

[7] *State v. Volk*, 2002 WI App 274, 258 Wis. 2d 584, 654 N.W.2d 24, was decided under the previous statutory sentencing scheme known as "TIS-I." *See id.* at ¶1 n.2 and ¶26. The parties do not contend that there has been any change in the relevant statutes from TIS-I to the current statutory scheme known as "TIS-II" which affects this holding from *Volk*. *See State v. Cross*, 2010 WI 70, ¶11 n.5, 326 Wis. 2d 492, 786 N.W.2d 64 (explaining that TIS-I applies to offenses committed after December 31, 1999, and that TIS-II applies to offenses committed after February 1, 2003); *Jackson*, 270 Wis. 2d 113, ¶2 n.2.

imposed the maximum period of initial confinement for the underlying offense. As discussed above in paragraph 15, the maximum period of initial confinement for the underlying offense is eighteen months. Based on the assumption of eighteen months, six months of the two-year maximum imprisonment for the underlying offense must be the term of extended supervision. According to Agnew, those amounts of time must be used to calculate how much of the penalty enhancer may be applied.

¶22 From those purportedly fixed amounts of initial confinement and extended supervision, Agnew then asserts that the maximum term of extended supervision for his penalty-enhanced sentence must be six months because, as noted earlier, the penalty enhancer must be added only to the initial confinement term and cannot be added to the extended supervision portion of the bifurcated sentence. *See* WIS. STAT. § 973.01(2)(c)1. According to Agnew's argument, the alleged maximum of six months of extended supervision for the penalty-enhanced sentence limits the amount of penalty-enhanced initial confinement because the six months of extended supervision must be at least twenty-five percent of the total penalty-enhanced confinement. In Agnew's view, the 25 percent requirement cabins the total initial confinement, after applying any penalty enhancer, to twenty-four months (twenty-five percent of twenty-four months is six months). *See* § 973.01(2)(d). And, as Agnew's argument goes, that means that the three-year term of initial confinement imposed by the circuit court is unlawful because it exceeds the purported twenty-four-month maximum initial confinement and the 25 percent extended supervision requirement. Summing up, and using Agnew's logic, the circuit court could not lawfully impose more than one-eighth (six months) of the four-year repeater penalty enhancer period to Agnew's initial confinement.

9

¶23  Agnew does not dispute that his argument is based on two necessary premises which, according to Agnew, drives the calculation of the amount of the repeater penalty enhancer that may lawfully be applied to the initial confinement portion of his sentence:  (1) the maximum amount of extended supervision for the penalty-enhanced sentence must be six months; and (2) for the term of extended supervision to be six months, it must be deemed that the maximum term of initial confinement for the underlying offense, eighteen months, has been imposed by the circuit court.  Agnew does not rely on any statute to support these necessary premises.  Rather, the sole authority cited by Agnew to support these premises is a clause in a footnote in *State v. Kleven*, 2005 WI App 66, ¶26 n.6, 280 Wis. 2d 468, 696 N.W.2d 226.

¶24  Accordingly, we now review *Kleven* with emphasis on footnote 6 of that opinion.

### B. *State v. Kleven*.

¶25  Kleven was convicted of attempted third-degree sexual assault which allowed for a maximum imprisonment term of five years. *Id.*, ¶3.  This court observed that, pursuant to TIS-I statutes[8] and *State v. Mason*, 2004 WI App 176, ¶6, 276 Wis. 2d 434, 687 N.W.2d 526, Kleven's attempt to commit that felony allowed a maximum term of initial confinement of two and one-half years. *Kleven*, 280 Wis. 2d 468, ¶21.  Kleven was also a "repeater" because of a prior felony conviction and subject to the then-current version of that penalty enhancer

---

[8] *State v. Kleven*, 2005 WI App 66, 280 Wis. 2d 468, 696 N.W.2d 226, was decided pursuant to the statutory sentencing scheme of TIS-I rather than TIS-II. *See id.*, ¶¶1, 19.

statute. In addition, Kleven was subject to another penalty enhancer statute because he attempted the sexual assault "while threatening to use a dangerous weapon." *Id.*

¶26 The *Kleven* court first determined the maximum confinement that could be imposed against Kleven for the underlying offense and the penalty enhancers. *Id.*, ¶¶20-23. This court then stated: "One step remains: determining what constraints apply to the term of extended supervision that may be ordered for the enhanced offense." *Id.*, ¶24. Footnote 6 of *Kleven* concerned that issue.

¶27 We pause to mention *State v. Harris*, 119 Wis. 2d 612, 350 N.W.2d 633 (1984), a case discussed in *Kleven* and footnote 6. The *Kleven* court recognized the holding of *Harris* that, for a penalty enhancer to be lawfully imposed, the total imprisonment sentence imposed (including the penalty enhancer) must be greater than the maximum imprisonment term for the underlying offense. *Kleven*, 280 Wis. 2d 468, ¶¶10-12, 15; and *Harris*, 119 Wis. 2d at 619 ("The repeater statute ... is not applicable to the sentence of a defendant unless the [circuit] court seeks to impose a sentence in excess of that prescribed by law for the crime for which the defendant is convicted."). *Kleven* refers to this as a "*Harris* violation," and we follow that lead.

## C. *Kleven* Does Not Support Agnew's Argument.

¶28 We now discuss why we reject Agnew's argument that a clause in footnote 6 of *Kleven* supports the two necessary premises already noted: (1) the amount of extended supervision for Agnew's penalty-enhanced sentence must be

six months; and (2) it must be deemed that the maximum term of initial confinement for the underlying offense, eighteen months, has been imposed by the circuit court.[9]

---

[9] For context, we note the sentence in the text to which the footnote is attached: "The second possibility is that, because 'the penalty enhancer cannot be bifurcated,' **Jackson**, 270 Wis. 2d 113, ¶32, … Kleven may be ordered to serve, at most, the maximum term of extended supervision available for his base offense, which is two and one-half years." **Kleven**, 280 Wis. 2d 468, ¶26.

Also, we set out the entirety of footnote 6 of **Kleven** highlighting the clause Agnew's argument relies on:

> Recall, the maximum term of imprisonment for Kleven's base offense is five years, and the maximum confinement that can be ordered for the base offense is two and one-half years. Thus, *because all two and one-half years of the confinement available for the base offense must be deemed to have been imposed in order for the enhanced term of confinement to apply,* the maximum available extended supervision that may be ordered under this interpretation is two and one-half years (5 years' maximum imprisonment for base offense less 2.5 years' maximum confinement for base offense = 2.5 years' maximum extended supervision available for enhanced offense).
>
> We also note that, under the rationale of Kleven's argument that his original sentence violated the holding in [**State v.**] **Harris**[, 119 Wis. 2d 612, 619-620, 350 N.W.2d 633 (1984),] because the court failed to impose a sentence for his base offense that exceeded the maximum imprisonment for his base offense, one could argue that, if an enhanced sentence is imposed (i.e., one that orders more than 2.5 years' confinement), the court *must* order the full 2.5 years of extended supervision available for the base offense. We reject this analysis and result. In order to avoid the error identified in **Harris**, it is only necessary that the sentence imposed exceed the maximum term of imprisonment for the base offense, and this may be accomplished with any combination of enhanced confinement exceeding 2.5 years, which, together with extended supervision equaling at least 25% of the confinement ordered, achieves a total sentence of more than five years' imprisonment. For example, if the court were to sentence Kleven to six-years' confinement and 1.5 years' extended supervision, it will have imposed a term of imprisonment (7.5 years) that exceeds the maximum for the base

(continued)

¶29　First, Agnew does not contend that any statute supports his interpretation of that clause in the **Kleven** footnote. Indeed, Agnew cannot cite to any statute which supports his interpretation of that clause in footnote 6 of **Kleven** because no such statute exists in our statutory sentencing scheme. *See* WIS. STAT. ch. 973. That Agnew's reading of that footnote has no statutory basis is notable. The legislature has set out a detailed statutory scheme governing bifurcated sentences for crimes, and Agnew's argument cannot change the sentencing policies made by the legislature. "[C]ourts should not add words to a statute to give it a certain meaning." *Fond du Lac Cty. v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989); *see* *State v. Wiedmeyer*, 2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes …."); *Dawson v. Town of Jackson*, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write."). "[R]ather, we interpret the words the legislature actually enacted into law." *State v. Fitzgerald*, 2019 WI 69, ¶30, 387 Wis. 2d 384, 929 N.W.2d 165. "'That is, a matter not covered is to be treated as not covered.'" *Enbridge Energy Co. v. Dane Cty.*, 2019 WI 78, ¶23, 387 Wis. 2d 687, 929 N.W.2d 572 (quoting *State ex rel. Lopez-Quintero v. Dittmann*, 2019 WI 58, ¶18, 387 Wis. 2d 50, 928 N.W.2d 480).

¶30　Second, as noted earlier, Agnew does not dispute that the circuit court, before imposing the penalty enhancer, could have imposed a lawful

---

offense (5 years), while meeting the applicable constraints on extended supervision (at least 25% of confinement, but not to exceed 2.5 years).

(First emphasis added; second emphasis in original.)

sentence on the underlying offense of one year of initial confinement and one year of extended supervision pursuant to WIS. STAT. § 973.01(2)(b). Yet, Agnew's argument would read that statutory subpart out of existence based on his contention that the clause in footnote 6 of *Kleven* requires that we assume that the circuit court ordered eighteen months of initial confinement and six months of extended supervision for the underlying offense sentence. As discussed, this court cannot ignore statutes in the way that Agnew contends.

¶31 Third, the initial paragraph of footnote 6 in *Kleven*, which contains the clause Agnew relies on, does not concern the minimum amount of extended supervision for a sentence as Agnew contends. Instead, that paragraph concerns the maximum extended supervision for Kleven's underlying offense. Therefore, the footnote's first paragraph does not support Agnew's position.

¶32 Fourth, the clause of footnote 6 that Agnew relies on, reasonably read, refers to avoidance of a *Harris* violation if either or both of Kleven's applicable sentencing enhancers were imposed. The argument discussed in the text to which footnote 6 of *Kleven* is attached is that the maximum extended supervision was two and one-half years for Kleven's underlying offense. To ensure that there can be no *Harris* violation, it is "deemed" (using the term in the clause on which Agnew relies) for purposes of analyzing that argument that the maximum initial confinement for the underlying offense of two and one-half years has been imposed. In that way, any amount of initial confinement based on a penalty enhancer would cause the sentence to exceed the five-year maximum imprisonment for the underlying offense and, as a result, avoid any *Harris* violation regarding Kleven's sentence.

¶33     Fifth, in ***Kleven***, 280 Wis. 2d 468, ¶18 n.4, this court stated that:

> The better practice for sentencing courts [is to impose the overall sentence] *without* allocating any portions of the confinement imposed among the base offense and enhancers.  Such allocation is not required by statute or case law, and in fact, appears to not only be contrary to the rationale of WIS. STAT. § 973.12(2), but may lead to unnecessary confusion or claims of error, as the facts of ***Harris***, [***State v.***] ***Upchurch***[, 101 Wis. 2d 329, 305 N.W.2d 57] and this case demonstrate.

Agnew's reading of the clause in footnote 6 would require a sentencing court to ignore that admonition in ***Kleven***.  Agnew's argument mandates that a sentencing court allocate portions of initial confinement to the underlying offense and the penalty enhancer.  Such action by the circuit court would be directly contrary to the "better practice" set out by this court in footnote 4 of ***Kleven***.

¶34     Sixth, the ***Kleven*** court gave clear direction to the circuit court for resentencing on remand.  *See **Kleven***, 280 Wis. 2d 468, ¶32.  We do not set forth those lengthy, detailed instructions here.  However, none of the instructions require, or can be reconciled with, Agnew's argument that, in calculating the maximum initial confinement and extended supervision for a penalty-enhanced sentence, it must be "deemed" that the sentencing court impose the maximum initial confinement for the underlying offense.

¶35     Finally, paragraphs 13 and 14 of ***Kleven*** note WIS. STAT. § 973.12(2), which states:

> In every case of sentence under [WIS. STAT. §§] 939.6195 or 939.62, the sentence shall be imposed for the present conviction, but if the court indicates in passing sentence how much thereof is imposed because the

15

> defendant is a repeater, it shall not constitute reversible error, but the combined terms shall be construed as a single sentence for the present conviction.[10]

If, as Agnew contends, the maximum initial confinement for the underlying offense "must be deemed to have been imposed in order for the enhanced term of confinement to apply," then § 973.12(2) would not state that the sentence should be considered as "a single sentence for the present conviction." *See **Kleven***, 280 Wis. 2d 468, ¶26 n.6. Agnew's argument, if accepted, would require circuit courts not to construe penalty-enhanced sentences as a single sentence contrary to that statutory subpart.

¶36    Accordingly, Agnew's argument must be rejected because it does not consider the entire footnote and its context within the ***Kleven*** opinion, and our statutory sentencing scheme. Instead, Agnew takes a few words out of context in an attempt to construct an argument.

¶37    In ***Volk***, 258 Wis. 2d 584, we rejected the State's argument about the intent of the legislature and stated: "If that truly was the legislative intent, the legislature has kept it well hidden." ***Id.*** at 604. The same may be said of Agnew's argument regarding the meaning of footnote 6 of ***Kleven***. If the intent of this court concerning the clause Agnew relies on was to limit the application of the repeater enhancement statute as Agnew contends, the court's intent was particularly "well hidden."

---

[10] The version of WIS. STAT. § 973.12(2) in effect at the time of the ***Kleven*** opinion is materially identical to the current version.

¶38 In sum, we reject Agnew's argument that the circuit court imposed an unlawful sentence. Accordingly, we affirm the circuit court.

## CONCLUSION

¶39 For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.